[Crim. No. 23434. Second Dist., Div. Five. June 26, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
GEORGE TIMOTHY DEWBERRY, Defendant and Respondent.

COUNSEL

Joseph P. Busch, District Attorney, Harry B. Sondheim and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo, Irwin Pransky and Ronald B. Davey, Deputy Public Defenders, for Defendant and Respondent.

## Opinion

**HASTINGS, J.**—The defendant, George Dewberry, was charged with burglary (Pen. Code, § 459.) Dewberry's motion to suppress the in-court identification of Gordon Stevenson, a witness, was granted on the basis that certain photographs shown to Stevenson by the police were unavailable for trial, and the cause was dismissed pursuant to section 1385 of the Penal Code. The People now appeal pursuant to Penal Code section 1238, subdivision (a)(8).

The facts adduced at the hearing were as follows: When Gordon Stevenson returned home on October 20, 1972, at approximately 9 p.m., he noticed that there appeared to be more lights burning in the house than he had remembered when he left. As he entered the house, he saw that lights were on in the living room, the bedroom and the kitchen, and he immediately caught a "fleeting glimpse" of a man in the bedroom. As Stevenson walked in, this man looked up and then exited by way of the outside kitchen door. Stevenson testified that he saw this stranger for "about a second or two" in the bedroom, lost sight of him for a second, and then saw him again for "seven seconds" in the kitchen before the man left. Stevenson ran outside to the alley, but "it was too dark to see anybody moving." He then went around to the parking area in front of his house and came "face to face" with the intruder. As this man was approaching an automobile from one side, Stevenson approached from the other side; however, as the man entered the vehicle, he was not able to get a good look at his face. Stevenson stated at the hearing that he "had no doubt in [his] mind that it was the same man that had left the house but if [he was asked] to detail it, his face, [he] couldn't do that."

Stevenson then called the police. He described the intruder to them as a black male in his late twenties or early thirties, approximately 6 feet tall and weighing about 180 pounds. Later that night, other officers showed him six to eight photographs, which, according to Stevenson, included black persons. Stevenson picked out the defendant's photograph. However, he was "not sure at that time of [his] identification" because the sideburns in that particular photograph "looked a bit different." Further, because of either the "angle" at which the picture was taken or the "lighting," he felt that he would be prevented from making and would not like to make a positive identification from the photographs.

At the hearing, Stevenson positively identified defendant as the man he saw in his house. When asked if his identification of defendant was

based upon "the events you observed in your apartment on the night it was burglarized," Stevenson replied that it was.

Officer Dawson testified that on October 20, 1972, he showed to Stevenson about seven black and white photographs, two of which were of the defendant; the other five were of different Negro men, all of whom were similar in appearance to the defendant; they were in their twenties and of approximately the same build; "[n]one were particularly thin or particularly fat and they all had medium and dark complexions as opposed to light or very light."

After the defendant's preliminary hearing, the officer returned the pictures to the detective bureau's files for further reference. At the hearing to suppress evidence, he was able to produce only those photographs of the defendant.

Defendant Dewberry, testifying in his own behalf, stated that he is 6 feet, 2¾ inches tall and weighs 213 pounds. Further, he had been growing a beard since July 7, 1972, and that his beard was, at this hearing, the longest that it had ever been.

Defendant contends that under *People* v. *Hitch* (Cal.) 113 Cal.Rptr. 158 [520 P.2d 974],[1] and *Eleazer* v. *Superior Court,* 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42], due process requires production of any evidence when it is reasonably possible that such evidence could assist the defense. Consequently, the trial court properly ordered the identification testimony suppressed.

It is true that there is a certain analogy between cases such as the present one, involving the nonmalicious destruction of evidence valuable to the defense, and the so-called "loss of informant" cases, such as *Eleazer* and *People* v. *Goliday,* 8 Cal.3d 771 [106 Cal.Rptr. 113, 505 P.2d 537]. Both *Eleazer* and *Goliday* make it clear that the prosecution cannot withhold information which might assist the defense in efforts to locate and produce an informant who is a material witness to a crime, and that the police and the district attorney must make reasonable efforts in good faith to locate such a person, so that either party, or the court itself, could, if it so desired, subpena him as a witness. However, this duty referred to does not arise until the defense makes a showing that the informant is a material witness, and it becomes apparent that loss of the evidence could hamper defendant in his defense. A defendant is to a large extent dependent upon the state for information as to the inform-

---

[1]On June 14, 1974, the Supreme Court granted a rehearing in *People* v. *Hitch.* We, therefore, decline discussing the applicability of the *Hitch* case to the case at bar.

ant's identity and whereabouts since it is the police who generally have had the principal contact with him. It is for this reason that the above mentioned duty is imposed when the informant is a material witness. Similarly, in cases involving a photographic line-up, the state has control of the photographs and the defendant is dependent upon the state for their production. Accordingly, once a showing has been made that it is reasonably possible that these photographs could assist the defense, due process requires that they be produced.

Whether this unavailable evidence would have provided information of value to the defense is predominantly a question of fact and the test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact.

In the present case the court summarized defense counsel's argument to suppress Stevenson's identification as.follows:

"You are arguing, basically, number one, that the eyewitness identification by this victim is a weak identification.

"You are assuming that even though the Court concludes that it is a strong positive identification that, nevertheless, the defendant is deprived of his right of cross-examination during the trial of this particular matter and it is impossible to make a final determination as to whether or not this witness's identification was tainted because we do not have the photographs before us; . . ."

The trial court then concluded that "in this case . . . there was a strong positive eyewitness identification by this victim [Stevenson]." The court then stated that it was "disturbed about the fact that the defendant is deprived basically of his right to cross-examine this witness during the course of the trial; it being *possible* that on cross-examination, it could be brought out that this witness was influenced in his identification by the photographs."

During the district attorney's argument, the court agreed that "the evidence is clear in this case from the witness's testimony that it is a positive identification" and that "there is *no evidence* to indicate . . . his in-court identification was in any way tainted by the photographic show-up." (Italics added.)

Nevertheless, the court, in granting the defendant's motion to suppress the in-court identification, as well as the photographic show-up, concluded that since the photographs shown to the victim, Stevenson, were no longer available and that since, normally, the defendant would be able to intro-

duce those photographs into evidence "in an attempt to convince the jury that this witness' identification was not based entirely upon what he observed at the time and which was tainted by his observation of photographs," the net result is, "basically . . . depriving the defendant of that method and technique of cross-examination. . . . that . . . he [defendant] is deprived of a fair trial because he is deprived of the opportunity of having 12 citizens make the determination as to whether or not this witness's identification is sufficiently positive and based upon his actual observation or based upon his observation of photographs. . . . I think that the defendant is being deprived of a very, very important right particularly under the facts of this particular case."

From an examination of the record there is *no* evidence showing that the missing photographs could be of any assistance to the defense, and it was only upon speculation that the court decided that defendant would be deprived of a fair trial without said photographs. It is only by this "speculation" that the photographic line-up was somehow unfair and that such unfairness resulted in contributing to the in-court identification. Defendant, by this tenuous and circuitous route seeks to question the result—the in-court identification.

Consequently, the remaining issue before us on this appeal is whether the failure, per se, to produce the photographs[2] precludes the defendant from obtaining a fair trial.

In *People* v. *Bethea,* 18 Cal.App.3d 930 [96 Cal.Rptr. 229], the defendant urged that the burden was upon the People to show that the in-court identification was free from the taint of an impermissibly suggestive pretrial photographic identification, and that when the People failed to produce the photographs at trial, this failure, as a matter of law, established that the photographic identification was improper. In rejecting the defendant's contention, the court, at page 938, stated, "The mere claim of unfairness is not enough. The [People's] burden does not arise until there is some evidence that the photographic identification procedure was impermissibly suggestive." The court then concluded that there was "no evidence of undue suggestion created by the procedures used. The testimony of the

---

[2]With reference to the failure of the officers to produce the photographs herein, it appears that such failure resulted from inadvertence or negligence, and not for the deliberate purpose of suppressing the truth; however, it is the duty of the officers to preserve \the photographs which are used for identification, and as the court said in *Simmons* v. *United States,* 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967], the better practice would be to make and keep a list of the pictures so used. To punish the prosecution for this kind of unintentional act is to put form over substance and bring justice into disrespect.

witness is clear and frank, and there is no hint of connivance, evasion or skulduggery on the part of the police. . . . The production of the photographs in question used by the police would be the ultimate in the way of proof that they were not unduly suggestive, *but it is not mandatory.* When the burden of proof indeed does shift to the prosecution to demonstrate the fairness of a photographic identification procedure, it may be extremely difficult in most cases to prove its fairness without the photographs, but we do not impose this requirement as a matter of law." (Italics added.)

Here, the court concluded that the witness's "identification was based upon his personal observation of this defendant at the time of the commission of the alleged crime," and noted that there was no evidence indicating that the in-court identification was in any way tainted by the photographic show-up. ■ A photographic identification procedure is not rendered unduly suggestive by the inclusion, as in the present case, of two pictures of the accused. (*United States* v. *Ballard,* 423 F.2d 127, 132.) Therefore, as set forth in *Bethea,* no burden arose upon the People to prove that the pretrial identification procedure was not unduly suggestive. A mere claim that the procedure might have been unfair is not enough to require that the People must produce the photographs where evidence establishes their nonavailability due to inadvertence and not intentional destruction.

■ An accused has, and defendant Dewberry availed himself of, the opportunity to cross-examine witnesses in an effort "to expose '. . . the method's potential for error.' " (*People* v. *Bethea, supra,* at p. 938.) The record before us discloses no unfairness; rather, it indicates that the photographic display was eminently fair. Officer Dawson testified that as he selected the various photographs, it was his intention to pick photographs that were similar in appearance to defendant; all of them were in black and white; each depicted men in their twenties, of approximately the same physical stature, with medium or dark complexions; and further, the victim positively identified defendant as the intruder.

Consequently, under the circumstances, the defendant would not be denied a fair trial by the unintentional inability of the police to produce the photographs.

■ On our own motion we asked the district attorney and the public defender to respond, in writing or at oral argument, on whether the trial court's ruling suppressing the identification testimony by the victim of the burglary was reviewable on appeal. Included in our query were questions

regarding the purpose behind the enactment of subdivision (a)(8) of Penal Code section 1238[3] and whether there are any tactical reasons why a defendant would make a motion to suppress identification testimony before the attachment of jeopardy. Both parties responded to our request; therefore, we answer the issue thus raised. We conclude that under the facts of this case, section 1238, subdivision (a)(8) does provide for a review of the trial court's ruling excluding identification testimony before jeopardy attaches when that ruling determines the case and results in a dismissal of the charge.[4]

In the case before us, the record establishes that defendant was unequivocally identified in court by the only witness, the victim. The trial court emphasized the fact that there was no evidence indicating that the in-court identification was tainted by the photographic show-up. Nevertheless, the trial court excluded the *in-court identification* which was vital evidence in the prosecution of the case.

To approve this result makes a mockery of justice. By prosecutorial inadvertence, a victim sees complete immunity given the perpetrator of the crime. Certainly there are two sides of the admonition often given to judges. As Lord Chancellor Farrer Herschell once said, "Important as it was that people should get justice, it was even more important that they should be made to feel and see that they were getting it." (See 2 Atlay, Victorian Chancellors (1908) 460.)

By the provisions of the section involved, the People may appeal "an order or judgment dismissing . . . the action before the defendant has been placed in jeopardy . . . ." It would have little meaning if the court could consider only the technical correctness of the order of dismissal but not review the reason behind it, especially when the two are intertwined.

In *People* v. *Beasley,* 5 Cal.App.3d 617 [85 Cal.Rptr. 501], the court, after quoting subdivision (8), states on page 635: "No recognizable policy appears against prosecution or punishment for a previously dismissed felony offense when jeopardy has not attached. . . . The question on review of

---

[3]Penal Code section 1238 provides in pertinent part: "(a) An appeal may be taken by the people from any of the following: . . .

"(8) An order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant has waived jeopardy."

[4]The trial court recognized the need for higher court review in the instant situation. After its ruling excluding the in-court identification, the court stated "I might indicate for the record that I personally believe—however, I have ruled in this case and I did rule in favor of the defendant—but I personally believe that a writ would be in order in this case."

such a dismissal order ordinarily is also whether under the circumstances the trial judge exceeded the bounds of judicial discretion. If there was such an abuse of discretion the order must be set aside. [Citations.]"

In the same case the court on pages 636-637 reviews policy considerations behind People's appeals after dismissals pursuant to section 1385 of the Penal Code and states, ". . . 'furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People,* in determining whether there should be a dismissal. [Citations.] . . . [S]ection 1385 specifies that the *'reasons of the dismissal must be set forth in an order entered upon the minutes.'* (Italics added.) . . . One of the purposes of the specification of reasons is to enable an appellate court to determine whether, in view of the reasons assigned to justify a section 1385 dismissal, a proper exercise of discretion is shown."

The analogy applies with equal force to the problem before us. To determine the propriety of the dismissal, we must consider the reasons given for the ruling. The inclusion of this evidence of in-court identification was essential to the prosecution; its erroneous exclusion necessitated dismissal.

We are not unmindful that the principal ground for restricting People's appeals (double jeopardy concept excepted) is the hardship placed on the defendant by the delay. This objection is substantially overcome in the statute by denying the People the right to refile if an appeal is taken. The decision on appeal is binding.[5] An appeal under section 1238, subdivision (a)(8) is an election of remedies.

The district attorney, in answer to our query *(supra),* correctly states there are numerous tactical reasons why defense counsel would make a motion to suppress identification testimony before the attachment of jeopardy. Counsel may make such a motion to discover what evidence the People have which would establish the defendant's identity, or ascertain which evidence would likely be admitted during trial. He may determine that his client would probably be convicted and should for the best interest of his client attempt to negotiate a plea. Once the trial has started, a plea negotiation is generally not available. Also, prior knowledge of the extent of crucial evidence that might be divulged by proper motions could place defense counsel in a better position to prepare and present his case. Further, counsel has additional opportunity to observe the witnesses while

---

[5]Penal Code section 1238, subdivision (b) provides: "If, pursuant to paragraph (8) of subdivision (a), the people prosecute an appeal to decision, or any review of such decision, it shall be binding upon them and they shall be prohibited from refiling the case which was appealed."

testifying under oath and this could be invaluable to an experienced trial lawyer. And finally, although other reasons might exist, defense counsel may wish to make a pretrial motion so that he will have two bites of the apple. If unsuccessful on the pretrial motion, he can renew it at trial.

The public defender, in written response to our query (*supra*), concedes that in certain cases pretrial motions on the issue of identification (particularly where there is more than one witness) might aid defense counsel to plan trial strategy.[6] In this phase of his response, he cited *People* v. *Smith*, 273 Cal.App.2d 547 [78 Cal.Rptr. 405], and referred to page 552. On that page, the court said: "We note that the procedure followed was not the statutory procedure under Penal Code section 1538.5, which applies only to a motion to suppress evidence 'obtained as a result of a search or seizure.' (See *People* v. *Superior Court* (1969) 70 Cal.2d 123, 127-130 [74 Cal.Rptr. 294, 449 P.2d 230].) The motion to suppress in this case was a somewhat analogous means of getting a ruling on a preliminary issue of fact to be decided by the court alone, prior to the selection of a jury, so that the jury would not be kept waiting while that issue was tried. Furthermore, the pretrial procedure enabled both sides to plan trial tactics in the light of the trial court's ruling upon this vital issue."

The concurring opinion would have us return the case to the trial court without ruling on the correctness of the trial court's exclusion of the in-court identification. This we do not choose to do. The parties would find themselves in the same position they were in just before the dismissal, when the People stated they were unable to proceed because of the court's ruling. To reverse in such a technical manner promotes unnecessary multiplicity of the proceedings. It was the trial court's own actions that compelled the dismissal[7] and we choose to treat the dismissal as having been made by the court on its own motion. (*People* v. *Curtiss*, 4 Cal.App.3d 123 [84 Cal.Rptr. 106].) The minute order stated the dismissal was pursuant to section 1385 of the Penal Code. The record before us demonstrates there was a pretrial hearing to consider a motion to suppress evidence; that the motion was granted, at which time the People declared their inability to proceed. This was adequate to notify this court on the reason for the dismissal, and complied with section 1385. (*People* v. *Bea-*

---

[6]The public defender, however, did not see how such a motion would be helpful to the defense here because there was only one identification witness.

[7]These actions in order are: exclusion of the in-court identification; a statement that the trial court personally believed that a writ would be in order; insistence that the People then determine if they could proceed to trial; preparation of a minute order stating it was a section 1385 dismissal, which only the court or the People can request.

*sley, supra.*) The in-court identification was mandatory to the success of the prosecution. After its exclusion the prosecution made it clear to the court that without this evidence they were not ready to proceed. The Legislature has given the trial court the power to dismiss under the broad standard of justice. (*People* v. *Superior Court,* 69 Cal.2d 491, 504 [72 Cal.Rptr. 330, 446 P.2d 138]) and there would be no reason to further detain or harass the defendant here by insisting the case continue in some form of vacuum when the People are unable to continue.

The order dismissing the action is reversed; the trial court is directed to set aside the order suppressing evidence.

Stephens, J., concurred.

**KAUS, P. J.**—I concur in the result. My reasoning is, however, quite different from that of the majority.

Briefly it is my view that, under the circumstances of this case, the trial court had no statutory authority to dismiss. I therefore do not reach the merits of the evidentiary ruling discussed in the court's opinion.

After the court made its ruling—"the motion to exclude is hereby granted"—it asked: "Can the People proceed at this time?" The prosecutor replied: "No, Your Honor." The following dialogue then ensued.

"THE COURT: I might indicate for the record that I personally believe— however I have ruled in this case and I did rule in favor of the defendant—but I personally believe that a writ would be in order in this case.

"[Prosecutor]: Your Honor, I have familiarity with the transcript. The transcript reflects that the primary evidence in this case is the identification by the witness that testified. There may be other evidence and before I make a representation that there is not, I would like to have an opportunity to check that fact.

"THE COURT: All you need to do is indicate to the Court whether you can or cannot proceed at this time based upon what ruling of the Court has been so far, whether you have sufficient evidence to proceed.

"[Prosecutor]: At this particular point in time, Your Honor, the People cannot proceed.

"[Defense Counsel]: Your Honor, then there will be a motion to dismiss on behalf of the defendant.

"THE COURT: The motion of the defendant is granted."

The legal effect of these proceedings apparently gave at least the clerk some concern. The minute order reads as follows: "Motion to Suppress certain evidence is called for hearing. Gordon V. Stevenson, James G. Dawson, and George Timothy Dewberry, are sworn and testify for defendant. The motion is argued and granted. The People declare their inability to proceed at this time. On motion of defendant, case is dismissed. Defendant is released on this case only. . . ."

Further down the page we see this notation: "(Dismissal is pursuant to Sec. 1385 PC.)" The clerk apparently appreciated that Penal Code section 1385 was the only conceivably statutory basis for the dismissal.

It is, however, undeniable that:

1). The defense did not move the court to dismiss under section 1385 of the Penal Code;

2). The court did not purport to dismiss under section 1385 of the Penal Code;

3). If it had so dismissed the case, it would have had no statutory authority to do so because section 1385 permits dismissals "in furtherance of justice" only on the court's own motion or on application of the prosecution;[1] and

4). The court did not comply with the statutory mandate that "[t]he reasons of the dismissal must be set forth in an order entered upon the minutes."

What does appear is that the prosecutor first announced that he was unable to proceed, that the court then expressed its belief "that a writ would be in order in this case," that the prosecutor asked for time to determine whether he had any proof other than the stricken "primary evidence," that the court then encouraged the prosecutor to state he could not proceed and, finally, that defense counsel then successfully moved to dismiss.[2]

---

[1]Penal Code section 1385 reads as follows: "The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

[2]I certainly do not mean to criticize the trial court. It was obviously motivated solely by a desire to have a difficult evidentiary ruling which possibly undermined the prosecutor's case reviewed by a higher court.

On these uncontrovertible facts it seems clear to me that the court acted in excess of its powers in dismissing the case.

In *People* v. *Ritchie,* 17 Cal.App.3d 1098 [95 Cal.Rptr. 462], the trial court dismissed a prosecution on motion of the defendant under these circumstances: The defense was in the process of presenting a motion to suppress under section 1538.5 of the Penal Code when it appeared that the physical evidence in question had been misplaced. The defense then moved to dismiss "in light of the fact that the evidence is not in court." The motion was granted for the purpose of obtaining an appellate ruling on the necessity of the evidence being in court. The People appealed under subsections (7) and (8) of subdivision (a) of section 1238 of the Penal Code. The Court of Appeal first held that the appeal under subsection (7) was not well taken because such an appeal only lies from a dismissal on the court's own motion based on an order granting a defense motion to suppress. No such order had been made. The People's right to appeal was therefore based on subsection (8) as from an "order or judgment dismissing . . . the action before the defendant has been placed in jeopardy . . . ." Subsection (8) is, of course, the statutory provision under which the People appeal in this case.

Adverting to the merits of the People's appeal, the *Ritchie* court found several reasons for reversing, some of which are equally applicable to this case.

After reviewing the various statutory provisions authorizing a trial court to dismiss a criminal prosecution, the court concluded that if the dismissal was authorized at all, section 1385 was the only possible authority. Section 1385 is, of course, the only possible basis for the dismissal in the case at bar.

The *Ritchie* court then pointed out that section 1385 "does not confer upon the defendant the privilege of moving to dismiss in the furtherance of justice." (*Ibid.,* p. 1104.) That was the first reason for the reversal in *Ritchie.* It should be the first and only reason for the reversal in this case.

*Ritchie* also held, citing a wealth of authority, that the statutory mandate that the reasons for the dismissal be set forth in the minutes is not merely directory, and that "neither trial nor appellate courts have authority to disregard this requirement." (*Ibid.,* pp. 1104-1105.)

The *Ritchie* court then pointed out that while the reporter's transcript showed the trial court's motivation, the minutes did not even go that far. That is equally true here. The minutes recite simply that the People declared their inability to proceed "at this time." The reporter's transcript

indicates, however, that the trial court's motivation for dismissing was precisely the same as that of the trial court in *Ritchie*: it wanted an appellate ruling on a point of law. Finally, it appears to be the law that even if the reporter's transcript discloses a reason for the ruling which might pass appellate muster, the dismissal is unauthorized unless those reasons are carried over into the minutes. (*People* v. *Beasley,* 5 Cal.App.3d 617, 637. [85 Cal.Rptr. 501].)[3]

These procedural defects alone demand a reversal. Yet even if the court had dismissed with every requirement of section 1385 punctiliously observed, I would hold as a matter of law that the dismissal was not "in furtherance of justice."

What happened here is simply this: Before jeopardy attached the defense made a nonstatutory motion to suppress certain evidence. Analytically, the motion to suppress Stevenson's courtroom identification was nothing but an objection to certain prosecution evidence which everyone assumed would be presented. Normally such pre-jeopardy timing is merely a matter of convenience to all concerned. (*People* v. *Smith,* 273 Cal.App.2d 547, 552 [78 Cal.Rptr. 405]; cf. *People* v. *Martin,* 2 Cal.3d 822, 832, fn. 11 [87 Cal.Rptr. 709, 471 P.2d 29].) I recognize that a defendant may have sound tactical reasons for moving to suppress certain evidence before jeopardy attaches. Certain it is that the ruling is not binding and that the trial court is free to change its mind after the case proceeds to trial. (*Saidi-Tabatabai* v. *Superior Court,* 253 Cal.App.2d 257, 266 [61 Cal.Rptr. 510].) Nothing in any statute of which I am aware suggests that the Legislature intended section 1385 to become a means for testing the correctness of a ruling adverse to the People simply because the prosecutor announces that because of the ruling he cannot proceed. While I have no doubt of the prosecutor's sincerity and judgment in the case at bar, I do note that he wanted time to evaluate his position in light of the adverse ruling and that his definitive declaration that he could not proceed was encouraged by the court.

It is, however, not difficult to imagine situations where a prosecutor simply misjudges the strength of his case or where his duty to be frank with the court is overwhelmed by his desire to teach it a lesson "upstairs."

Thus, even in the case at bar, I am not at all sure that the prosecution

---

[3] "The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the *minutes* must reflect the reason 'so that all may know why this great power was exercised.' [Citations.]" (*People* v. *Beasley, supra,* 5 Cal.App.3d at p. 637. Italics in original.)

would have been unable to prove a prima facie case without Stevenson making a courtroom identification of defendant. He could still have described the person he saw in his home, and testified to the license number of the car in which he left. Defendant, it appears, was seen or arrested while driving that car a little later. Or what if unbeknownst to the court or defense counsel, the intruder was observed by other witnesses while entering or leaving the Stevenson residence?

These theoretical possibilities should, I submit, give us pause for concern before holding, expressly or by implication, that section 1385 authorizes dismissals "in furtherance of justice" simply because the prosecutor announces after an adverse pre-jeopardy ruling that he no longer has a case.

The net effect of a holding that 1385 dismissals are proper when, after an adverse evidentiary ruling which happens to have been made before the attachment of jeopardy, the People announce that they cannot proceed, is to give the People—via an appeal under Penal Code section 1238, subdivision (a)(8)—a right to have such rulings reviewed on appeal. In view of the common law tradition against such review[4] and the very limited right to such review extended by section 1252 of the Penal Code,[5] I would require very clear proof that the Legislature ever intended the People to have the benefit of such review. I find the evidence to be mostly the other way.

As far as superior courts are concerned, pre-jeopardy dismissals did not become appealable until 1968. (Stats. 1968, ch. 532, p. 1185, § 1.)[6] If, at that time, the Legislature had felt that 1385 dismissals were proper just because an adverse evidentiary ruling had undermined the People's case— and that, therefore, the People's new right to appeal gave them a right to have such rulings reviewed—one wonders why, a year earlier (Stats. 1967, ch. 1537, p. 3652) the Legislature had gone to so much trouble to declare that after an adverse ruling under section 1538.5 of the Penal Code the trial court could dismiss the action—but only on its own motion— under section 1385 (Pen. Code, § 1538.5, subd. (1)), and to extend to the

---

[4]See *Green* v. *United States*, 355 U.S. 184, 188 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119].

[5]Penal Code section 1252 reads, in relevant part as follows: "On an appeal by a defendant, the appellate court shall, in addition to the issues raised by the defendant, consider and pass upon all rulings of the trial court adverse to the State which it may be requested to pass upon by the Attorney General."

[6]Pre-jeopardy dismissals by inferior courts have been appealable since 1935. (Stats. 1935, ch. 769, p. 2145, § 1.) (See Pen. Code, § 1466.)

People a right to appeal from such dismissal.[7] In 1967 the Legislature apparently appreciated that 1385 dismissals were not designed to salvage a prosecution which had become embarrassed for lack of proof. (Cf. *People* v. *Disperati,* 11 Cal.App. 469, 476 [105 P. 617].) It therefore carefully restricted both the People's right to appeal from dismissals under section 1538.5, subdivision (1) and the very power to dismiss under that subdivision to dismissals on the court's own motion, eliminating dismissals "upon the application of the prosecuting attorney," otherwise proper under section 1385. If the trial court, nevertheless, dismisses on application of the People, they cannot appeal. That is the clear holding of *People* v. *Caserta,* 14 Cal.App.3d 484, 487 [92 Cal.Rptr. 382].

It thus appears that the Legislature is acutely aware of the extraordinary nature of appellate review of rulings adverse to the People. If, in 1968, it had thought that 1385 dismissals were appropriate simply because the prosecutor asserted that a pre-jeopardy evidentiary ruling had gutted the People's proof, it would have been less casual about instituting appellate review of such rulings than just to say that such dismissals were appealable.[8]

Be that as it may—the issue is obviously debatable—the question of legislative intent with respect to the proper substantive uses of section 1385 should be left for decision in a case in which the trial court has at least attempted to comply with the procedural requirements of the statute.

A petition for a rehearing was denied July 26, 1974, and respondent's petition for a hearing by the Supreme Court was denied September 5, 1974.

---

[7]The People's right to appeal from such dismissals was provided by what is now Penal Code section 1238, subdivisions (a)(7). The unique nature of rulings suppressing evidence on illegal search and seizure grounds was explained in *In re Sterling,* 63 Cal.2d 486 [47 Cal.Rptr. 205, 407 P.2d 5].

[8]I realize that these considerations leave in doubt just what the Legislature intended to happen if after a successful nonstatutory pre-jeopardy objection to prosecution evidence the People no longer have a case. The motion being nonstatutory, the Legislature may be forgiven for not having provided a solution. In most cases it would probably be a waste of time to proceed to trial, although, as noted, the court has the power to change its ruling. A practical solution would be for the People to apply for a dismissal and for the court to grant it. Having moved for the dismissal the People should not be in a position to argue on appeal that the court exceeded the bounds of a correct application of section 1385. (Cf. *People* v. *Ritchie,* 17 Cal. App.3d 1098, 1107 [95 Cal.Rptr. 462].)