[Crim. No. 28697. Second Dist., Div. Two. Oct. 18, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT LAFLORANCE HARRIS, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Barney Goldstein for Defendant and Respondent.

**OPINION**

**COMPTON, J.**—Defendant was charged in an information filed by the District Attorney of Los Angeles County with the crimes of burglary and grand theft. After entering pleas of not guilty, defendant moved for an order of discovery of evidence in possession of the prosecution. The trial court, following a hearing on the motion, entered an order dismissing the information.

The People have appealed from the order of dismissal as they are authorized to do under Penal Code section 1238, subdivision (a)(8). The order appealed from is contained in a minute order which declares that dismissal is granted on motion of counsel for defendant and recites no statutory authority therefor. The grounds for the order are stated as "unavailability of evidence vital to the case."

 Penal Code section 1385 authorizes a court to dismiss an action *on its own motion and in furtherance of justice.* The reasons for the dismissal must be set forth in the order of dismissal to permit a review of the correctness of the order. While a trial court has wide discretion under this section its authority to dismiss is not absolute and an order of dismissal must in fact further the interests of justice and be a reasonable exercise of discretion. "Furtherance of justice" necessarily requires consideration of the interests of the public as well as the defendant. (*People v. Rawlings,* 42 Cal.App.3d 952 [117 Cal.Rptr. 651]; *People v. Curtiss,* 4 Cal.App.3d 123 [84 Cal.Rptr. 106]; *People v. Superior Court,* 26 Cal.App.3d 668 [102 Cal.Rptr. 925]; *People v. McAlonan,* 22 Cal.App.3d 982 [99 Cal.Rptr. 733].)

We have reviewed the reporter's transcript of the hearing which led to the dismissal and it is clear that the court was disposed to dismiss the case on its own motion. Furthermore the transcript illuminates and

explains what the court meant by "unavailability of evidence vital to the case." Hence, in spite of the deficiency of the minute order, we treat the dismissal as being made on the court's own motion pursuant to Penal Code section 1385, and proceed to discuss the propriety of the court's ordering the case dismissed. (See *People* v. *Dewberry*, 40 Cal.App.3d 175 [114 Cal.Rptr. 815].)

At the preliminary hearing held in this case on November 24, 1975, one Jack Wynn testified that on September 14, 1975, after a brief absence from his home, he returned to find a strange man emerging from one of the bedrooms of the house. The man was carrying a shopping bag. Mr. Wynn faced the intruder and requested him not to take any property. The suspect, however, fled out the door. Mr. Wynn gave chase but was unable to catch the suspect. The victim later discovered that four pistols had been stolen from the house.

Mr. Wynn in testifying to the details of the chase volunteered the fact that the suspect lost a cap during his flight. On cross-examination Mr. Wynn was asked to repeat the description of the suspect that he had given to the police. Again in narrating those details he said the suspect had worn a brown cap.

Neither counsel for the People nor defense asked any specific questions about the cap and it was never again mentioned. Counsel's disinterest in the cap is understandable inasmuch as Mr. Wynn's identification of defendant as the perpetrator was made under somewhat unique circumstances.

Mr. Wynn testified that he worked for Mattel Toy Company. On the day after the incident he went to work and observed that the defendant was a fellow employee—one he had not seen before, but one who worked in an area of the plant about 75 yards from Wynn's station. Wynn, upon seeing defendant, immediately recognized him as the person who had been in his home. He notified the police. Defendant was subsequently arrested and charged.

At the hearing on the discovery motion, defendant produced two police officers who had been involved in the investigation of the case. The first officer who took the report from the victim on the day of the burglary testified that the victim had given him a brown cap. The officer booked the cap into the property room at the police station.

A second officer testified that he was one of the follow-up investigators. The cap was never tried on the defendant. The cap was destroyed on November 25, 1975, following the preliminary hearing. The hearing on discovery was held on March 9, 1976, some four months later. The officer who had authorized the destruction could not, as of the date of the hearing of the discovery motion, recall the incident nor why he had permitted the destruction.

Defendant's contention, with which the trial court agreed, is that he cannot now receive a fair trial without the physical presence of the cap in the courtroom and that the only proper sanction for the error of the police in destroying the cap is a dismissal of the case and a complete bar to future prosecution.

We are of the opinion that the cap has assumed more importance in its destruction than it had in its existence. It will be remembered that the cap was voluntarily mentioned by the victim in his testimony at the preliminary hearing and defense counsel did not ask a single question concerning the description of the cap nor how it sat on the suspect's head.

Since defendant has at no time claimed that the officers tried the cap on him the testimony that they did not is uncontroverted. It thus appears clear that the prosecution attached no significance to the cap and never intended to make use of it as evidence.

The trial court's minute order of dismissal, as indicated, recites that the evidence is "unavailable." This is an implied determination that the "unavailability" was not the result of bad faith destruction nor intentional suppression of evidence by the prosecution. In fact that entire picture when reviewed in perspective suggests carelessness, inadvertence and administrative error as occurs from time to time in a large organization such as the Los Angeles Police Department. No bad faith or malice is indicated.

Thus the test to be applied in this case is the one applicable to the situation of a nonmalicious, good faith destruction of evidence. The sanctions to be applied need only be what is required to assure defendant a fair trial and not what amounts to a punishment or a penalizing of the prosecution. (*People* v. *Hitch,* 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].) A criminal prosecution is not like a game of

tag where a defendant can claim "Kings X" at each and every imperfection in the conduct of the police or the prosecutor.

In *Hitch, supra,* the Supreme Court ruled that the prosecution in a drunk driving case could not use the results of a chemical test of defendant's blood alcohol content unless it preserved the test material in such a manner that defendant would have an opportunity to check and verify the validity of the results.

"[W]here, . . . such evidence cannot be disclosed because of its intentional but nonmalicious destruction by the investigative officials, sanctions shall . . . be imposed for such nonpreservation and nondisclosure . . . in such . . . event due process shall not require a dismissal of the action but shall require merely that the *results* of the . . . test be excluded from evidence." (*People* v. *Hitch, supra,* at pp. 652-653.)

Here of course the prosecution cannot offer the cap in evidence and apparently never intended to. Furthermore, the prosecution has no evidence based upon the retrieval of the cap by the victim that would affirmatively point to defendant's guilt. The officer cannot, for example, testify that the cap fit the defendant and it is obvious that there was nothing about the cap by way of tags or markings which suggested that the cap belonged to the defendant.

Contrary to the situation in *Hitch, supra,* defendant here is not threatened with the use against him of an item of evidence which is now beyond his power to controvert. Obviously defendant's position is that he knows nothing about the cap, it was not his and he has never seen it. He does not contend that its presence *would* benefit him. His claim is that if it were produced it *might* not fit him and that this would point to his innocence.

While a defendant has the right to have available to him and to produce any competent and relevant evidence of his innocence, where an item of evidence is unavailable under circumstances such as are present here, the court must, of necessity, evaluate the importance of the missing evidence in order to fashion a fair and proper remedy.

In our opinion the production of the cap would have had little probative value one way or the other. There is nothing in the record to suggest that the size of the defendant's head varies markedly from

average. The fact that the cap might appear to be loose fitting, tight fitting or "just right" would not aid defendant very much. A perfect fit would, if anything, aid the prosecution but remembering that the cap fell off the suspect's head during flight, a misfit would not necessarily help defendant.

The only possibility by which the cap could be of aid to the defendant would be if it were so small or so large in comparison to defendant's head as to appear outlandish. That possibility is not of sufficient significance to justify the Draconian measure of dismissal nor to support a determination that a fair trial is impossible.

Defendant will have the opportunity at trial to question the victim and the officers as to the description and size of the cap and to exploit the destruction of the cap by resort to Evidence Code section 413.[1] On the other hand the defendant has the option, consistent with the rule of *People* v. *Hitch, supra,* to block any reference to the cap if he so desires.

Assuming the prosecution has no additional evidence to connect the defendant to the burglary, the key issue is Wynn's identification of the defendant. The absence of the cap does not impair defendant's ability to vigorously probe Wynn's credibility, and if defendant desires to raise the issue of the cap, its effect can be fairly assessed by the trier of fact.

In sum we believe that defendant can receive a fair trial and that no sanction is warranted other than those that are contained in the regular rules of evidence.

The order of dismissal is vacated.

Roth, P. J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 16, 1976.

---

[1] Evidence Code section 413 provides: "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case."