[Crim. No. 12955. Third Dist. Aug. 21, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
KENNETH R. BRADLEY, Defendant and Respondent.

Counsel

John K. Van de Kamp, Attorney General, Joel Carey and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Opinion

**BYRNE, J.**\*—Plaintiff appeals from an order dismissing charges against defendant, entered after the trial court imposed sanctions on the prosecution for failing to collect blood-sample evidence for preservation in accordance with *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]. Plaintiff contends law enforcement officers had no duty to collect and preserve bloodstained articles discovered at the scene of the crime and, if they did, the sanction imposed was not appropriate. We agree that law enforcement officers had no initial duty to collect the blood stains and shall reverse.

### Facts

On the evening of December 30, 1979, Starlene Medeiros was severely beaten in her home by a man who apparently gained entry by breaking through her living room window. Upon returning home that evening, Ms. Medeiros saw the broken window. While searching the house for a possible burglar, she discovered a man in the closet of her spare bedroom. The man threatened her at knife point, tied her up and beat her to the point of bleeding. Ms. Medeiros identified defendant Kenneth Bradley as the man in question, both in a photographic lineup and at the preliminary hearing.

Officers Halley and Neves responded to the incident. Ms. Medeiros, who had gone to a neighbor's house, told them how she discovered the broken living room window and came upon the burglar in a bedroom closet. Officer Neves went to the victim's house. He inspected the broken window and discovered blood about the inside of the window and on the curtains. He also inspected the bedroom closet where he discovered some blood on a plastic garment bag. He also found blood on the bed and on the bedroom telephone.

After Ms. Medeiros was taken to the hospital, Officer Halley went to her residence. He also observed blood on the curtains at the point of entry. He

---

*Assigned by the Chairperson of the Judicial Council.

observed blood on the clothing in the closet where the burglar was discovered, as well as on the dresser and the bedroom doorknob.

Thereafter Sergeant Herron arrived at the house to gather evidence. Officers Neves and Halley showed Sergeant Herron about the house, pointing out what they had discovered and what had transpired. Officer Neves pointed out the blood on the living room window curtains. Sergeant Herron also was shown the bloodstains on the garment bag in the closet, but not any stains on the clothing. Sergeant Herron primarily took evidence in the form of fingerprints and photographs. He attempted to scrape some blood off the floor of the bedroom, but he did not recall being able to obtain a sufficient sample for analysis. He did not collect any samples from the closet. He did not recall why he failed to take more blood samples from the bedroom, other than because he assumed it was the victim's blood. He did not collect any blood samples from the point of entry. In explanation, Sergeant Herron testified he either did not feel the sample was sufficient for analysis or it was an oversight on his part.

Officer Barrow interviewed Ms. Medeiros while she was in the hospital. He also spoke with one of the officers who was at the scene. He prepared a memorandum in January 1980 stating that the burglar was apparently injured when he entered the house and may have suffered a cut on his arm or hand. That month he also went to Ms. Medeiros' house to show her a book of photographs. He viewed the scene of the crime and did not recall viewing any bloodstained articles.

A complaint was filed against defendant in October 1980. He was not arrested until March or April 1981. In May 1981, while discussing the preliminary hearing at the district attorney's office, Ms. Medeiros stated she had items at her house which were bloodstained. Officer Barrow received the items from her, which consisted of a dress that had hung in the closet where the burglar was discovered, a set of curtains from the living room window, and a set of curtains from the bedroom window. The dress had been cleaned before Ms. Medeiros turned it over. Officer Barrow submitted these items to the Department of Justice in June 1981.

James Streeter of the Department of Justice conducted tests on the items. He detected human blood of ABO type A on the set of curtains from the bedroom. He detected blood on the set of curtains from the living room, but he could not type it or determine whether it was human blood. He could not detect blood from the stain on the dress. Mr. Streeter testified that the time lapse between the date of the incident and the date the tests were performed decreased the likelihood of identifying the blood. He would have expected to be able to type the blood on the living room curtains if he had

tested it near the time it was deposited, although he was not certain of this. Because of the summer heat, he would not expect to be able to test the stains after the first summer without preservation. He testified the stains on the dress appeared to be blood, but the washing of the dress prevented him from identifying it. Defendant's blood type is RHO positive.

Defendant was charged by information with burglary (Pen. Code, § 459); assault with intent to commit rape (Pen. Code, § 220); false imprisonment (Pen. Code, § 236); battery (Pen. Code, § 242); assault with a deadly weapon (Pen. Code, § 245, subd. (a)); and personal infliction of great bodily injury on a person other than the accomplice to the offenses. (Pen. Code, § 12022.7.) Defendant pled guilty to burglary, assault with intent to commit rape, and assault with a deadly weapon, and was sentenced to a total term of six years, four months.

Defendant appealed, contending he was denied the right to a speedy trial. We held this issue was not generally cognizable on appeal following a guilty plea. However, when defendant tendered his plea, the trial court erroneously assured him he could reserve his right to appeal the speedy trial issue and issued a certificate of probable cause. Accordingly, we reversed the judgment to permit defendant an opportunity to withdraw his guilty plea. (*People* v. *Bradley* (Sept. 8, 1982, 3 Crim. 11759).) Defendant withdrew his plea of guilty and entered a plea of not guilty.

Prior to trial defendant moved to dismiss the charges against him or order sanctions on the ground that the prosecution effectively destroyed material blood sample evidence by failing to collect and preserve bloodstained articles discovered at the scene of the crime in time for effective testing. As an alternative to dismissal, defendant requested the court to instruct the jury that it is to presume that the blood left on the living room curtains and the dress was not defendant's.

The trial court concluded that under the circumstances of this case, law enforcement authorities had a duty to collect the bloodstained articles and negligently failed to do so. As a sanction, the court followed defendant's proposed alternative sanction and stated it would instruct the jury that it must presume the blood stains in question are not defendant's.

The prosecution indicated to the court it would be unable to proceed in light of the court's decision. Pursuant to Penal Code section 1385 the court

dismissed the case.[1] The People appeal, seeking review of the trial court's decision to impose sanctions for failure to collect the bloodstained items.[2]

## DISCUSSION

Plaintiff contends law enforcement officials had no duty or obligation to collect or gather for preservation and testing the bloodstained articles discovered in the victim's house following the crime.

In *People* v. *Hitch, supra,* 12 Cal.3d at pages 650, 652, our Supreme Court established the principle that the prosecution's due process obligation to disclose material evidence favorable to the accused creates a concomitant duty to *preserve* such evidence before a request for discovery has been made. "[W]here . . . such evidence cannot be disclosed because of its intentional but nonmalicious destruction by the investigative officials, sanctions shall . . . be imposed for such nonpreservation and nondisclosure unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the" evidence. (*Id.,* at pp. 652-653.) Later cases have extended the sanctions required by *Hitch* to cover negligent loss and unintentional destruction of material evidence. (*People* v. *Alfieri* (1979) 95 Cal.App.3d 533, 546 [157 Cal.Rptr. 304]; *People* v. *Swearingen* (1978) 84 Cal.App.3d 570, 574 [148 Cal.Rptr. 755].)

When a defendant makes a motion for sanctions under *Hitch,* he or she must establish that the evidence in question is material. "When the evidence is no longer in existence, the defendant need only show that there is a

---

[1] Penal Code section 1385 provides: "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

Although the minute order containing the dismissal declares the motion to dismiss was made by the district attorney, it is apparent the court dismissed the case on its own motion. Earlier, the court declined to order dismissal as a sanction for failure to preserve the bloodstains, but it indicated it would consider dismissing the case in order to preserve the record for appeal. Later, the district attorney indicated he could not proceed in light of the court's ruling on the *Hitch* motion and suggested that the proper procedure to preserve the issue for appeal was for the court to dismiss the case pursuant to section 1385, relying upon *People* v. *Dewberry* (1974) 40 Cal.App.3d 175 [114 Cal.Rptr. 815]. Thereupon, without motion from the district attorney, the court dismissed the case pursuant to section 1385. Although the minute order does not set forth the specific reasons for the dismissal (other than the district attorney's inability to proceed), the reporter's transcript sufficiently illuminates the reasons therefor. (See *People* v. *Harris* (1976) 62 Cal.App.3d 859, 861-862 [133 Cal.Rptr. 352].)

[2] Under Penal Code section 1238, subdivision (a)(8), the People may appeal from the order of dismissal in this case and by this means seek review of the ruling underlying the dismissal. (*Harris, supra,* at pp. 861-862; *Dewberry, supra,* at p. 182.)

reasonable possibility that the evidence, if preserved, would have constituted favorable evidence on the issue of guilt or innocence." (*People* v. *Newsome* (1982) 136 Cal.App.3d 992, 1001 [186 Cal.Rptr. 676].) Moreover, "the mere loss or unavailability of material evidence is insufficient of itself to justify the imposition of sanctions; there must be a preliminary finding that the evidence was lost because of its destruction or inadequate preservation by the investigative officials." (*Id.*, at p. 1002.)

■ The resolution of these questions, however, does not resolve the threshold question before us: whether law enforcement officials had a duty to collect the bloodstained articles in the first instance; or more specifically, whether the duty to preserve evidence encompasses an initial duty to gather or *collect* or seize potential evidence for defendant's use which investigative officers discover at the scene of the crime. We conclude it does not.

One of the principle authorities relied upon by the court in *Hitch, United States* v. *Bryant* (D.C. Cir. 1971) 439 F.2d 642, 651, holds only that " '. . . the duty of disclosure [and hence preservation] attaches in some form once the Government has first gathered and taken possession of the evidence in question. . . .' " (*Hitch, supra,* 12 Cal.3d at p. 650.) Thus, "*Hitch* merely holds that evidence the prosecution once possesses must be held." (*People* v. *Miller* (1975) 52 Cal.App.3d 666, 669 [125 Cal.Rptr. 341].)

The Supreme Court later commented: "*Hitch* and *Nation* [*People* v. *Nation* (1980) 26 Cal.3d 169 (161 Cal.Rptr. 299, 604 P.2d 1051)] imposed a duty to preserve evidence which the police had already obtained. Neither case imposed a duty to obtain such evidence or to conduct any particular tests. [Citation.] The police cannot be expected to 'gather up everything which might eventually prove useful to the defense.' [Citations.]" (*People* v. *Hogan* (1982) 31 Cal.3d 815, 851 [183 Cal.Rptr. 817, 647 P.2d 93].) Although the court left open the possibility that there might be circumstances in which sanctions should be imposed for failure to obtain evidence, it did not delineate those circumstances.

*Hitch* does not "affirmatively require[] the police to employ specific investigative techniques" (*People* v. *Cooper* (1979) 95 Cal.App.3d 844, 850 [157 Cal.Rptr. 348]), nor impose a "duty to affirmatively exert effort to discover potential evidence . . . for the purpose of preserving such evidence for the defense" (*People* v. *Maese* (1980) 105 Cal.App.3d 710, 720 [164 Cal.Rptr. 485]), nor a duty "to test the evidence in the absence of a defense request . . . ." (*People* v. *Newsome, supra,* 136 Cal.App.3d at p. 1006.) Moreover, "[t]he prosecution is not required to engage in foresight and gather up everything which eventually might prove useful to the defense." (*People* v. *Watson* (1977) 75 Cal.App.3d 384, 400 [142 Cal.Rptr. 134]; see

also *People* v. *McNeill* (1980) 112 Cal.App.3d 330, 338 [169 Cal.Rptr. 313].)

In this case, Mr. Streeter was not sure the blood at the scene of the crime could have been typed if it had been preserved, although he would have expected to be able to. Sergeant Herron, who was responsible for gathering evidence at the scene, believed the blood in the bedroom was the victim's and may have felt the amount of blood at the point of entry was not sufficient to yield useful test results. Although the blood stains were potentially material, and the prosecution would doubtless have been required to preserve them had they actually been collected, to require law enforcement officers in the first instance to collect blood stains at the scene of a crime which may or may not yield useful results would compel them to "gather and collect everything which, with fortuitous foresight, might prove useful to the defense" (*People* v. *McNeill, supra,* 112 Cal.App.3d at p. 338), and improperly "cast upon the prosecution the burden of preserving what may only be termed 'potential' evidence . . . ." (*People* v. *Maese, supra,* 105 Cal.App.3d at p. 720.)

This case is different from the *Hitch* situation where raw data (breath) was collected, tested, and destroyed. Destruction of the raw data precluded defendant from himself testing it, thereby denying him the opportunity to impeach the incriminating test results. Nor is this case like *People* v. *Nation, supra,* 26 Cal.3d 169, where *collected* evidence (semen) was retained but not adequately preserved to allow defendant to test it. In each case, evidence was *actually collected* by law enforcement officers. But, as *Hogan, supra,* points out, neither case imposed a duty to obtain such evidence in the first instance. (*Hogan, supra,* 31 Cal.3d at p. 851.)[3]

Against these and other cases cited, we have found no cases of precedential value which squarely hold that the prosecution's duty to preserve material evidence encompasses an initial duty to affirmatively collect or gather or seize potentially material evidence in the course of an investigation for defendant's use.

The trial court's decision was based upon two grounds, neither of which withstands scrutiny. First, the court determined that the police technically "seized" the evidence when they secured the scene of the crime for the purpose of collecting evidence. We cannot agree that merely by securing the scene of a crime, the police are deemed to have come into possession of all potentially material evidence at the scene. To so hold would effec-

---

[3]This opinion has a limited scope. It is not in conflict with *Hitch,* a preservation situation, as distinguished from our holding dealing with a collection situation.

tively place a burden upon the police to engage in foresight and collect everything that might prove useful to the defense, a burden which, as we have shown, the law does not impose.

Second, the court relied upon *People* v. *Trombetta* (1983) 142 Cal.App.3d 138 [190 Cal.Rptr. 319], in concluding that under current law the police have a duty to collect evidence in certain circumstances. In that case, police officers administered a breath test with an intoxilyzer and failed to preserve a breath sample for defendant's use. The court concluded that under *Hitch* the police had a duty to preserve or collect a breath sample for defendant's use.

However, *Trombetta* did not hold that the police have a duty to *collect* evidence potentially favorable to the accused *in the first instance.* Unlike the breathalyzer in *Hitch,* the intoxilyzer in *Trombetta* did not preserve the actual breath sample tested by the machine. The question before the court, therefore, was whether, after actually *collecting* a breath sample, the police must take measures to *preserve* the evidence, either by preserving that sample or collecting its equivalent. In answering in the affirmative, the court held "[d]ue process demands simply that where evidence is *collected* by the state, as it is with the intoxilyzer, or any other breath testing device, law enforcement agencies must establish and follow rigorous and systematic procedures to preserve the captured evidence or its equivalent for the use of the defendant." (*Trombetta, supra,* 142 Cal.App.3d at p. 144.) The court cited a Colorado Supreme Court case which also involved breath tests, *Garcia* v. *Dist. Court, 21st Jud. Dist.* (1979) 197 Colo. 38 [589 P.2d 924], wherein it was stated law enforcement officials must "'. . . collect and preserve evidence when those acts can be accomplished as a mere incident to a procedure routinely performed by state agents . . . .'" (589 P.2d at pp. 929-930.) However, that case did not hold that law enforcement officials have a duty to collect evidence in the first instance. Instead, like *Trombetta,* the court held that once law enforcement officials did collect evidence, they must preserve the evidence or collect its equivalent for use by the defendant. (*Id.,* at p. 930.)

In any event, *Trombetta* was reversed by the United States Supreme Court in *California* v. *Trombetta* (1984) — U.S. — [81 L.Ed.2d 413, 104 S.Ct. 2528]. The Supreme Court determined that because police officers acted in good faith and because the intoxilyzer is a reliable mechanism for measuring blood alcohol level, due process did not require the preservation of a breath sample. (— U.S. at p. — [81 L.Ed.2d at p. 422].)[4]

---

[4]A case from the same district as *Trombetta, In re Michael L.* (Cal.App.), held police had a due process duty to seize a videotape of a robbery from which photographs were taken for identification purposes. Our Supreme Court has granted a hearing in that case. (Crim. 23647, Apr. 19, 1984.)

Accordingly, we hold law enforcement officers in this case had no due process duty to collect bloodstained articles found at the scene of the crime to preserve them for defendant's use.

■ This is not a case where sanctions are appropriate. At worst, law enforcement officers negligently failed to collect raw bloodstains which, from appearances at the time, may or may not have been sufficient to yield useful test results. We cannot even conclude with hindsight that the stains would have produced useful results. The case against defendant did not hinge on this evidence; indeed, no test results were obtained which were of any use to the prosecution. The prosecution's case rested primarily upon the victim's eyewitness testimony. Thus, this is not like *Hitch,* where the raw breath sample produced test results upon which the entire case against defendant stood.

The sanctions imposed, if they are called for, need only be those required to assure a fair trial. (*People* v. *Zamora* (1980) 28 Cal.3d 88, 99 [167 Cal.Rptr. 573, 615 P.2d 1361].) The bloodstains could not have been used against defendant in any case, since they yielded no useful results. The imposition of sanctions depends on the circumstances attending the loss of the evidence, the materiality of the evidence, and the impact of the sanction upon future cases and police conduct. (*Id.,* at p. 100.) In this case, the failure to collect bloodstains was at worst an oversight, at best a good-faith determination that they were not sufficient to produce useful test results. In hindsight, the evidence unquestionably was potentially material.

In terms of the impact of the sanction in this case on future police conduct, it would, as we indicated earlier, effectively compel police to engage in foresight and collect every piece of discovered evidence of potential materiality to defendant's case. Moreover, as this case demonstrates, it would require the prosecution to preserve such evidence indefinitely for the use of an unknown or unlocatable suspect.

In considering a sanction "the court must bear in mind the public interest in law enforcement, and the harm which may be inflicted by a sanction which prevents the trial and conviction of possibly guilty future defendants." (*Ibid.*) The sanction in this case would advance neither effective law enforcement nor the search for the truth. Law enforcement officials have a strong interest in collecting sufficient evidence upon which to identify a suspect and convict the person responsible for a crime. Only in rare cases would well-trained and diligent law enforcement officers fail to seize a piece of evidence that is so obviously material that it could conclusively convict or exonerate a defendant. While police might have a duty at some point to seize an item of evidence, they have no duty to make defendant's case for

him in the course of an investigation. The police conduct under the circumstances of this case is simply not of a nature to require sanctions.

The order dismissing the action is reversed; the trial court is directed to set aside the order imposing sanctions on the prosecution for failure to collect the bloodstain evidence.

Puglia, P. J., and Carr, J., concurred.