[Crim. No. 13418. Third Dist. Mar. 8, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS STEVEN KANE, Defendant and Appellant.

**COUNSEL**

Sat Karam Kaur Khalsa, under appointment by the Court of Appeal, Maharaj Singh Khalsa, and Thomas Steven Kane, in pro. per., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Lisa Lewis Dubois, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CARR, J.**—A jury found defendant guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)),[1] with attendant use of a firearm (§ 12022.5), discharging a firearm at an occupied motor vehicle (§ 246), and possession of a firearm as a convicted felon (§ 12021). Defendant admitted a prior serious felony conviction. (§ 667.) He appeals, contending (1) the failure to suppress certain evidence violated the rule of *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], and (2) he was improperly sentenced.

---

[1] All statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 17, 1982, at approximately 7 p.m., the victim, Charles Grigsby, drove to the Journey's End bar, of which he was part owner, to participate in a "jam session" scheduled for that evening. As he was about to enter the bar, defendant, a previous customer of the bar, approached him and began arguing with him. The argument led to fisticuffs. After the altercation, Grigsby decided to go home. In the parking lot, he entered his car. A brief confrontation with defendant occurred and Grigsby accelerated. As he drove out of the parking lot he heard something hit his car and thought that defendant had thrown a rock at him. He backed up his vehicle to challenge defendant, saw defendant pointing a handgun at him, crouched low in the driver's seat and drove away as fast as possible.

Grigsby contacted the police, met with them at the tavern later that evening and showed them an indentation in his car door. Officer James Deaton took photographs of the car and concluded a bullet had caused the damage. The morning after the incident, Grigsby and his wife returned to the bar and Grigsby found an expended bullet in the parking lot near where his car had been located. After the police were contacted, Officer Gregory Twilling fitted the slug in the indentation in the car and found it was a perfect match. No measurements were taken nor other tests made of the door by any expert on behalf of the People. No paint samples were taken. Grigsby maintained possession of the car and, four or five weeks after the incident, had the door repaired.

Criminalist Donald Stottlemyer examined the bullet and found that it was a flattened, mushroomed, nominal .32 caliber bullet with a shape that was consistent with having been deflected against a metal door. There was a transfer of red paint on the nose of the bullet. Grigsby's car was red. Stottlemyer testified that the bullet could not have been fired from a starter pistol.

Defendant testified that after the confrontation, he fired two shots out of a starter pistol. Lucretia Ringling, a friend of defendant's, testified that she had seen defendant in possession of a starter pistol on numerous occasions.

## DISCUSSION

### I

■ Defendant first contends the court erred in admitting evidence of the relationship of the slug to the car door's dent as the car door had not been preserved. Relying on *People* v. *Hitch, supra,* 12 Cal.3d 641, defend-

ant asserts the police had a duty either to impound the car or to admonish the victim not to repair the door. We disagree.

■ *Hitch* held that due process requires the police undertake reasonable efforts to preserve material evidence which bears upon the guilt or innocence of the defendant. (At p. 650.) ■ However, prior to determining the question of the materiality of the evidence at issue, it must be determined whether a duty to gather or collect potential evidence existed. (*People* v. *Bradley* (1984) 159 Cal.App.3d 399, 405 [205 Cal.Rptr. 485].) We conclude it did not. *Hitch* did not impose a "duty to affirmatively exert effort to discover potential evidence . . . for the purpose of preserving such evidence for the defense." (*People* v. *Maese* (1980) 105 Cal.App.3d 710, 720 [164 Cal.Rptr. 485]. ■ "The prosecution is not required to engage in foresight and gather up everything which might eventually prove useful to the defense." (*People* v. *Watson* (1977) 75 Cal.App.3d 384, 400 [142 Cal.Rptr. 134]; see *People* v. *McNeill* (1980) 112 Cal.App.3d 330, 338 [169 Cal.Rptr. 313].)

To require law enforcement officers to collect evidence which may or may not yield useful results would compel them to "gather and collect everything which, with fortuitous foresight, might prove useful to the defense" (*People* v. *McNeill, supra,* 112 Cal.App.3d at p. 338), and improperly "cast upon the prosecution the burden of preserving what may only be termed 'potential' evidence, . . ." (*People* v. *Maese, supra,* 105 Cal.App.3d at p. 720.)

■ Here defendant was not arrested until January 22, 1983, although a warrant for his arrest had issued on November 5, 1982. He was arrested in the State of Oregon and although the record does not show when he was returned to California, we note the preliminary hearing was not held until May 11, 1983. To impound the victim's car, or to remove and impound the door, or to require him to refrain from repairing the car for whatever period of time it takes to apprehend defendant are not reasonable options to impose on a victim and, if regularly required and employed, can only lead to a refusal by victims so circumstanced to submit matters of this kind for resolution to the established criminal justice system. The police here did not fail to use "reasonable efforts" to preserve potential evidence (*Hitch, supra,* 12 Cal.3d at p. 650), and there was no error in denying defendant's motion to impose sanctions for failure to preserve evidence.

## II

Defendant next contends the court committed numerous sentencing errors. We examine each of these arguments individually.

### A

■ First, defendant contends the court failed to adequately advise him of the penal consequences of his admission of a prior conviction. Defendant was informed of and waived his privilege against self-incrimination, right to a jury trial, right to a specially bifurcated trial, and right to present evidence on his own behalf. Defendant then admitted he suffered a prior conviction for burglary. The following day, the prosecutor notified the court it had failed to advise defendant of the penal consequences of his admission; such advisement was then given and defendant reaffirmed his admission.[2] Defendant was properly advised of the penal consequences of his admission. (See *In re Yurko* (1974) 10 Cal.3d 857, 863 [112 Cal.Rptr. 513, 519 P.2d 561]; *People* v. *Olgin* (1982) 130 Cal.App.3d 184, 186 [181 Cal.Rptr. 563].)

### B

■ Next, defendant contends the crime underlying his prior felony conviction on which the enhancement was based, "burglary of the first degree,"[3] is not a "violent felony" within the meaning of section 667.5. However, the court did not rely on section 667.5 to impose the five-year enhancement but properly imposed the enhancement for commission of a prior serious felony pursuant to section 667.

The abstract of judgment lists section 667 as the applicable enhancement, and the court stated at the sentencing hearing that the additional five years was for defendant's prior "serious felony" conviction. Section 667, unlike section 667.5, provides for a five-year enhancement for any person convicted of a "serious felony" who previously has been convicted of a "serious felony."[4]

---

[2]Defendant was not expressly advised of his right to confrontation. However, the trial court nonetheless adequately advised defendant of the rights involved in the waiver. (See *People* v. *Lizarraga* (1974) 43 Cal.App.3d 815 [118 Cal.Rptr. 208].)

[3]In 1977, section 459 provided: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, railroad car, trailer coach as defined by the Vehicle Code, vehicle as defined by said code when the doors of such vehicle are locked, aircraft as defined by the Harbors and Navigation Code, mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary."

Additionally, section 460 provided: "1. Every burglary of an inhabited dwelling-house, trailer coach as defined by the Vehicle Code, or building committed in the nighttime, and every burglary, whether in the daytime or nighttime, committed by a person armed with a deadly weapon, or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first degree. [¶] 2. All other kinds of burglary are of the second degree."

[4]Defendant separately contends the court improperly imposed a five-year term, when section 667.5 calls for a lesser term. We reject this argument because, as noted above, the court imposed the enhancement under section 667, which calls for a five-year term, *not* section 667.5.

Moreover, defendant's prior conviction of first degree burglary is a serious felony as the record discloses it was a burglary of a residence. (§§ 667, 1192.7, subd. (c)(18).) The information did not charge burglary of a residence, but the court asked defendant whether he had suffered a prior conviction "within the meaning of Penal Code 667 and 1192.7." Defendant responded affirmatively. This admission constituted an adjudication that the structure burglarized was a residence. (*People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736]; *In re Gilliam* (1945) 26 Cal.2d 860, 866 [161 P.2d 793]; *In re Boatwright* (1932) 216 Cal. 677, 681 [15 P.2d 755].)

## C

■ Defendant further contends the court improperly made a "dual use of facts" by enhancing his sentence twice for the use of a firearm. Defendant's argument appears to be that since the firearm use is the sole factor making the present offense a "serious felony" under section 667,[5] enhancement for the firearm use under section 12022.5 and enhancement for the prior burglary conviction under section 667 constitutes an improper use of a single fact to impose double punishment. We disagree.

This case does not involve double punishment for the single act of using a firearm. The firearm use was punished *once* as an enhancement under section 12022.5 and was further used to *define* the present offense as a "serious felony" in order to impose an additional punishment for the *prior conviction.* It is the status of the present crime as a "serious felony" which allows the imposition of additional punishment for the prior conviction.[6] The two types of enhancements serve different purposes and punish different conduct. Use enhancements go to the nature of the *offense,* increasing the punishment on the basis of certain circumstances accompanying the crime. Prior offense enhancements go to the nature of the *offender,* punishing him or her for the habitual commission of crimes. (See *People* v. *Tassell* (1984) 36 Cal.3d 77, 90 [201 Cal.Rptr. 567, 679 P.2d 1].) ■ The specific purpose of section 667 is to punish recidivism so as to discourage persons who commit serious felonies from doing so again. (*People* v. *Jacobs* (1984)

---

[5]Section 667, subdivision (d), defines a "serious felony" as a serious felony listed in section 1192.7, subdivision (c). The list in subdivision (c) of section 1192.7 includes "any other felony in which the defendant uses a firearm." (§ 1192.7, subd. (c)(8).)

[6]For an analogous case, see *People* v. *Faught* (1981) 124 Cal.App.3d 848 [177 Cal.Rptr. 637]. There, defendant was convicted of possession of a weapon by a convicted felon (§ 12021) and subjected to an enhancement for a prior prison term. This did not involve a "dual use" of the prior conviction to impose double punishment because the prior was punished once as an enhancement and further used to define defendant's status as a felon. It was this status which made the possession of a firearm a crime. (See also *People* v. *Carter* (1983) 144 Cal.App.3d 534, 541-542 [193 Cal.Rptr. 193].)

157 Cal.App.3d 797, 802-803 [204 Cal.Rptr. 234]; *People* v. *Villasenor* (1984) 152 Cal.App.3d 30, 33-34 [199 Cal.Rptr. 349].)

■ When an enhancement is imposed for a firearm use under section 12022.5, defendant is being punished for the use of a firearm in the commission of the present offense; when an additional punishment is imposed for a prior serious felony conviction under section 667, defendant is being punished as a repeat offender. There is no dual use of a fact to impose double punishment.[7] If we adopted defendant's reasoning, in all cases where the offense is a "serious felony" because of the use of a firearm, courts would be required to choose between punishing the firearm use or punishing the defendant's recidivism. We perceive no such intention in the statutes, particularly in light of the mandatory language of section 667.

### D

■ Finally, defendant contends the imposition of concurrent terms on the discharging a firearm at an occupied motor vehicle (§ 246) and possession of a firearm by a convicted felon (§ 12021) are barred by the section 654 proscription against multiple punishment since defendant was also punished for assault with a deadly weapon involving discharge of the same firearm. The People concede the error.

Defendant possessed the firearm, fired it at Grigsby and hit the Ford Granada in an indivisible course of conduct. (See *People* v. *Bauer* (1969) 1 Cal.3d 368, 377 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398], cert. den. 400 U.S. 927 [27 L.Ed.2d 187, 91 S.Ct. 190].) The court imposed concurrent sentences when it should have stayed the terms imposed upon the less serious offenses of violation of sections 246 and 12021. (See *People* v. *Miller* (1977) 18 Cal.3d 873, 888 [135 Cal.Rptr. 654, 558 P.2d 552].)

### DISPOSITION

The term imposed on the count of discharging a firearm at an occupied vehicle and possession of a firearm by a convicted felon are ordered stayed

---

[7]In analogous cases involving section 667.5, courts have affirmed judgments which imposed enhancements both for firearm use under section 12022.5 and for prior prison terms under section 667.5, even though, as here, the use of the firearm in the offense was the sole factor making the offense a "violent felony" subject to enhancement for prior prison terms under section 667.5. (*People* v. *Wolcott* (1983) 34 Cal.3d 92 [192 Cal.Rptr. 748, 665 P.2d 520]; *In re Hall* (1982) 132 Cal.App.3d 525 [183 Cal.Rptr. 560]; see *People* v. *Flowers* (1982) 132 Cal.App.3d 584 [183 Cal.Rptr. 276] (to similar effect, but involving enhancement for infliction of great bodily injury under § 12022.7). (§ 667.5, subd. (c)(8).)

until the sentence imposed on the assault with a deadly weapon count is served, the stay then to become permanent. The trial court is directed to modify the abstract of judgment accordingly and to forward a copy of the amended abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.

A petition for a rehearing was denied April 5, 1985, and appellant's petition for a hearing by the Supreme Court was denied May 2, 1985.