Filed 9/17/15  P. v. Taylor CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>REGINALD WALTER TAYLOR, JR.,<br><br>    Defendant and Appellant. | F067854<br><br>(Super. Ct. No. F13902883)<br><br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>**[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on August 31, 2015, be modified in the following particulars:

1. On page 5, the first sentence of the paragraph under the heading **DISCUSSION**, the words "a modified version of" are inserted between the word "specifically" and the word "CALCRIM" so that the sentence reads:

> Defendant contends the true finding on premeditation must be reversed because of ineffective assistance of counsel in that defense counsel failed to request a pinpoint instruction, specifically a modified version of CALCRIM No. 522.

2.  On page 5, the first sentence of the paragraph under the heading

I. CALCRIM No. 522, the words "a modified version of" are inserted

between the word "request" and the word "CALCRIM" so that the

sentence reads:

> Defendant contends he received ineffective assistance of counsel
> because defense counsel failed to request a modified version of
> CALCRIM No. 522 (Provocation:  Effect on Degree of Murder).

3.  On page 5, footnote 2 is deleted.  The following footnote is inserted in

its place:

> Defendant asserts the jury should have been instructed that:
> "Provocation may reduce an attempted premeditated murder to only
> attempted murder.  The weight and significance of the provocation,
> if any, are for you to decide.  [¶]  If you conclude that the defendant
> committed an attempted murder but was provoked, consider the
> provocation in deciding whether the crime was premeditated
> attempted murder or simply attempted murder, even if the
> provocation is not sufficient to reduce the offense to attempted
> manslaughter."

4.  On page 7, the first sentence of the first full paragraph, the words

"instructed with CALCRIM No. 664, which" are inserted between the

word "was" and the word "informed"; the word "them" is inserted

between the word "informed" and the word "that" so that the sentence

reads:

> In addition, the jury was instructed with CALCRIM No. 664, which
> informed them that acting pursuant to a sudden quarrel or heat of
> passion reduced the attempted killing to attempted voluntary
> manslaughter and that the concept of provocation was a factor in
> determining whether the action was the result of heat of passion or
> sudden quarrel.

There is no change in judgment.

Appellant's petition for rehearing is denied.

_____
DETJEN, J.

WE CONCUR:

_____
POOCHIGIAN, Acting P.J.

_____
PEÑA, J.

3.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REGINALD WALTER TAYLOR, JR.,<br><br>    Defendant and Appellant. | F067854<br><br>(Super. Ct. No. F13902883)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Wayne R. Ellison, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant and appellant Reginald Walter Taylor, Jr., was found guilty of premeditated attempted murder, assault with a firearm, and being a felon in possession of a firearm, arising out of an incident at a barber shop in a mall. Defendant contends he received ineffective assistance of counsel in that defense counsel did not request the jury be instructed with CALCRIM No. 522 (Provocation: Effect on Degree of Murder); consequently the true finding on premeditation must be reversed. He also contends the trial court erred in imposing a concurrent term of imprisonment for being a felon in possession of a firearm, asserting Penal Code[1] section 654 requires the punishment be stayed because a term was imposed for the personal use of a firearm enhancement appended to the premeditated attempted murder conviction. We reject his contentions and affirm.

**FACTUAL AND PROCEDURAL SUMMARY**

On March 13, 2013, Sarah Diaz was working as the manager of the All American Sports Fan store in Manchester Mall in Fresno. From the sports store, a person can see the barber shop called Colima's Fade Shop. About 7:30 p.m., two people entered the sports store: Abel Price, a thin man wearing a blue shirt, and defendant who was wearing dark jeans and a white T-shirt. A video showing Price and defendant inside the sports store was shown to the jury.

After defendant and Price left the sports store, a fight broke out in the mall between Price and one of the barbers, Ronnie Moore. Defendant also was involved in the fight with Moore. Defendant ran off before Price and Moore stopped fighting. As he left, defendant stated, "I'm gonna kill this mother fucker." When the fight ended, Price left with a woman who had been yelling at Moore during the fight.

---

[1] References to code sections are to the Penal Code.

2.

Someone had summoned the mall security guards and they arrived and spoke with Moore and individuals who had witnessed the fight. As Diaz was walking back to her store after being interviewed, she saw someone running toward the barber shop. The person was wearing dark jeans and a white T-shirt. Diaz identified the person as defendant.

Diaz feared for Moore's safety and saw Moore duck into the barber shop bathroom. Diaz saw defendant lift up his arm. Defendant held a large, black handgun in his right hand. Defendant aimed in the direction of Moore as Moore ducked into the barber shop's bathroom. After firing the shots, defendant ran toward a mall exit. Moore explained that he had a daughter with Trenice Williams and Williams was the one who was yelling at him during the altercation in the mall. Williams had demanded to speak with Moore immediately, even though Moore was busy with a client. Moore refused to identify defendant as the individual in the white T-shirt out of fear someone else would be harmed. The other barber also felt intimidated.

Moore testified that the man in the white T-shirt punched him; the man in the blue shirt joined the fight. As the fight ensued, the man in the white T-shirt left the area. Someone announced they were calling the authorities and Moore let go of the man in the blue shirt. Shortly thereafter, Moore heard someone say that somebody was coming back and Moore ran to the bathroom.

Rafiola Binger was at the barber shop so her son could get a haircut from Moore. Binger heard Williams and Moore arguing and saw the altercation break out into a physical fight. Binger identified defendant as one of the two men confronting Moore. Later, defendant returned to the barber shop and started shooting. Shots were fired into the bathroom. Binger was hit in the back; she heard the shots and felt burning and pain to her spine. Four bullet holes were found in the wall at the back of the barber shop, near the bathroom door.

3.

Binger was hospitalized for over a month following surgery on her back. The parties stipulated that Binger was struck in the lower back by a bullet and the injury necessitated surgery. The injury resulted in the paralysis of Binger's lower extremities and satisfied the great bodily injury enhancement.

Law enforcement tracked defendant and Price to Eureka, California. Defendant and Price were arrested in Eureka on March 22, 2013.

Defendant was charged in count 1 with premeditated attempted murder; in count 2 and count 3 with assault with a firearm; and in count 4 with being a felon in possession of a firearm. As to counts 1, 2, and 3, it was alleged that defendant personally used a firearm. As to counts 1 and 2, it was alleged defendant inflicted great bodily injury. In addition, it was alleged that defendant had suffered a prior serious felony conviction and had served a prior prison term. Defendant pled not guilty and denied all allegations and enhancements.

On July 16, 2013, trial on the prior conviction and prior prison term allegations were bifurcated. At that time, defendant admitted his felony status for count 4, his prior serious conviction, and his prior prison term.

A jury was empaneled on July 18, 2013, to hear the trial on the substantive charges and the remainder of the allegations and enhancements. The jury returned verdicts finding defendant guilty as charged of all counts and enhancements on July 23, 2013.

Defendant was sentenced on August 20, 2013. The trial court imposed a term of life with the possibility of parole on count 1, with a consecutive 25-to-life term for personally inflicting great bodily injury. A doubled upper term was imposed for count 2, but stayed pursuant to section 654. A concurrent term of eight years for count 3 and a concurrent term of six years for count 4 were imposed. The trial court imposed, then struck, a one-year term for the prior prison term enhancement. Various fines and fees were imposed and defendant was awarded 174 days of presentence custody credit.

4.

**DISCUSSION**

Defendant contends the true finding on premeditation must be reversed because of ineffective assistance of counsel in that defense counsel failed to request a pinpoint instruction, specifically CALCRIM No. 522. He also contends the trial court erred at sentencing because section 654 mandates the term imposed for the offense of being a felon in possession of a firearm be stayed.

I. CALCRIM No. 522

Defendant contends he received ineffective assistance of counsel because defense counsel failed to request CALCRIM No. 522 (Provocation: Effect on Degree of Murder).[2] He also asserts defense counsel's closing argument exacerbated the problem. We disagree.

*Factual Summary*

A jury instruction conference was held in chambers. The next morning, the trial court convened in open court outside the presence of the jury. At that time, the trial court stated the proposed instructions in their final wording had been shared with counsel. Defense counsel was asked if he had reviewed the proposed instructions, to which counsel responded "Yes." The trial court then asked defense counsel if he had any objection to any of the instructions or their wording as proposed, to which counsel responded "No." The trial court then asked defense counsel if there were "[a]ny instructions you are asking the court to give, [defense counsel], that the court is not proposing to give?" Defense counsel responded, "No, there is not, Your Honor."

---

[2]    Defendant asserts the jury should have been instructed that: "Provocation may reduce a murder from first degree to second degree. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder."

5.

In closing argument, defense counsel argued there was insufficient evidence the person wearing the white T-shirt was defendant; and no "proof beyond a reasonable doubt" that defendant acted with premeditation. Defense counsel argued the evidence established attempted manslaughter, not attempted murder, in that it was the result of a "sudden quarrel or heat of passion" and the result of provocation. Defense counsel argued the shooting was the result of provocation – the fight with Moore – and the shooter acted out of "rage" and "wasn't thinking clearly." Defense counsel pointed out that the exchange with Moore was more than "calling each other names," it also included a number of punches landed by Moore on defendant. Defense counsel argued an "average person under those circumstances" would be "provoked."

*Analysis*

An instruction on provocation for second degree murder is a pinpoint instruction that need not be given sua sponte by the trial court. (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1333; *People v. Rogers* (2006) 39 Cal.4th 826, 880 [discussing CALJIC No. 873's provocation instruction].) In order to establish ineffective assistance of counsel from the failure to request this instruction, defendant must demonstrate a reasonable probability that, but for the failure to request this instruction, the outcome would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-694, 697-698.) That probability must be sufficient to undermine confidence in the verdict. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) Defendant has failed to demonstrate the outcome would have been different had the instruction been given.

The decision about what jury instructions to request is inherently a tactical decision to be made by counsel. (*People v. Padilla* (2002) 98 Cal.App.4th 127, 136.) Tactical decisions must be viewed based upon facts at the time, not in hindsight, and rarely warrant a reversal. (*People v. Hinton* (2006) 37 Cal.4th 839, 876.)

The jury received numerous instructions relating to count 1. Among the instructions given was CALCRIM No. 601, informing the jury they had to determine if

the attempt was made deliberately and with premeditation and defining those terms for the jury. That instruction also informed the jury the People had to prove premeditation and deliberation beyond a reasonable doubt.

In addition, the jury was informed that acting pursuant to a sudden quarrel or heat of passion reduced the attempted killing to attempted voluntary manslaughter and that the concept of provocation was a factor in determining whether the action was the result of heat of passion or sudden quarrel. This instruction informed the jury that if defendant was provoked, the jury was to determine if the provocation was sufficient; in other words, whether a person of average disposition in the same situation would have reacted from passion rather than judgment.

The sufficiency of the provocation is judged objectively; a defendant is not allowed to set up his own standard of conduct. (*People v. Steele* (2002) 27 Cal.4th 1230, 1254.) If the provocation is inadequate to reduce the offense to attempted voluntary manslaughter, it may be considered by the jury in determining whether a defendant acted with premeditation and deliberation. (*Id.* at p. 1255.)

When viewing the entire set of instructions given to the jury, it is apparent the instructions given adequately and fully instructed the jury on defendant's theory; that he was provoked into acting rashly in the heat of passion. (*People v. Holt* (1997) 15 Cal.4th 619, 677.) The jury, however, reasonably could have, and did, reach a conclusion contrary to that urged by the defense.

Here, one witness estimated the time lapse from when defendant ran out of the barber shop to when gunshots were heard as two or three minutes. The overwhelming majority of the evidence, however, establishes that a much longer time period elapsed before gunshots were heard. After defendant left, the fight between Moore and Price continued. Price and Williams then left the area. The mall security guards arrived and interviewed Moore and other witnesses to the fight. These interviews were over before Diaz observed defendant running toward the barber shop and shots being fired.

7.

Defendant had to leave the barber shop, retrieve a gun, and return to the barber shop; a process that by most witnesses' accounts had to have taken much more than two or three minutes.[3]  The length of time that elapsed was sufficient for any passion induced by the provocation to have waned.  (*People v. Wickersham* (1982) 32 Cal.3d 307, 327, overruled on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200.)

The issue of provocation is only relevant to the extent it "'bears on the question' whether defendant premeditated and deliberated." (*People v. Rogers*, *supra*, 39 Cal.4th at p. 878.)  In convicting defendant, the jury necessarily rejected defendant's defense that he acted reasonably and in the heat of passion and found that the People had proved deliberation and premeditation beyond a reasonable doubt.

There was no ineffective assistance of counsel in failing to request CALCRIM No. 522 and defendant was not prejudiced.

## II.  SECTION 654

At sentencing, defendant received a life term for premeditated attempted murder, plus a term of 25 years to life for personally discharging a firearm.  The trial court stayed imposition of punishment on count 2, one of the assault with a firearm convictions, but imposed concurrent terms for counts 3 and 4, the other assault with a firearm conviction and the conviction for being a felon in possession of a firearm.  Defendant contends section 654 precludes punishment for the count 4 offense of being a felon in possession of a firearm.  He is mistaken.

Section 654 bars multiple punishment when a defendant is convicted of two or more offenses that are incident to one objective.  (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.)  Whether section 654 applies in a given case is a factual question for the

---

**3**     Moreover, we are not convinced that a person of "average disposition, in the same situation" would have left the barber shop only to return with a gun and attempt to kill someone.

trial court to determine; we apply the substantial evidence standard of review to a trial court's findings on section 654. (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1414.)

Defendant did not have a gun prior to the fight at the barber shop. He did not have a gun when he ran toward an exit of the mall. It was not until after defendant returned to the mall, that he had a gun. Defendant's possession of the gun was a distinct and separate act from the shooting. There was "no 'fortuitous circumstance[]' putting the weapon in [defendant]'s hand at the moment of the [shooting] such that the act of possession might in some meaningful way be indistinguishable from the [shooting]." (*People v. Rosas* (2010) 191 Cal.App.4th 107, 111.)

Defendant cites to *People v. Bradford* (1976) 17 Cal.3d 8, where the defendant wrested the gun from the victim and immediately used the weapon. Under this circumstance, there is no distinctly antecedent and separate possession. (*Id*. at p. 22.)

When a felon's possession of a gun is not fortuitous, as when the gun is wrested from the victim in a struggle, section 654 will not apply to stay imposition of punishment for the offense of being a felon in possession of a firearm. (*People v. Vang* (2010) 184 Cal.App.4th 912, 917.) Moreover, the offense of being a felon in possession of a firearm does not require that the weapon be loaded or fired (*ibid*.), as was the case here.

Defendant also cites to *People v. Kane* (1985) 165 Cal.App.3d 480 and *People v. Cruz* (1978) 83 Cal.App.3d 308. Neither assist defendant.

In *Kane*, the defendant argued the imposition of concurrent terms for his convictions of discharging a firearm at an occupied motor vehicle and possession of a firearm by a convicted felon, was barred by section 654. (*People v. Kane*, *supra*, 165 Cal.App.3d at p. 488.) The People conceded error. (*Ibid.*) Without any analysis, the court concluded the sentence for possession of a firearm by a felon must be stayed. (*Ibid.*)

In *Cruz*, the defendant was convicted of three counts of assault with a deadly weapon by use of a firearm, and of possession of a firearm by a felon. (*People v. Cruz*,

9.

*supra*, 83 Cal.App.3d at p. 313.)  Cruz had returned to a bar minutes after being refused entrance and shot the doorman and two others.  (*Id.* at p. 314.)  The People conceded the prosecution failed to prove the possession of the handgun was "'antecedent and separate'" from the use of the gun in the assault and the court did not address that issue. (*Id.* at p. 333.)

In *People v. Jones* (2002) 103 Cal.App.4th 1139, however, the court addressed the issue.  Jones was convicted of shooting at an inhabited dwelling and possession of a firearm by a felon.  (*Id.* at p. 1141.)  Jones, a passenger in a vehicle, went to the victim's home.  The driver of the vehicle parked in front of the house.  When it was determined the victim was not home, the vehicle left.  Approximately 15 minutes later, the vehicle passed by the victim's home.  Jones, still a passenger in that vehicle, fired several gunshots at the home.  (*Id.* at pp. 1141-1142.)  The court found "when an ex-felon commits a crime using a firearm, and arrives at the crime scene already in possession of the firearm, it may reasonably be inferred that the firearm possession is a separate and antecedent offense, carried out with an independent, distinct intent from the primary crime. Therefore, section 654 will not bar punishment for both firearm possession by a felon [citation] and for the primary crime of which the defendant is convicted."  (*Id.* at p. 1141.)

Here, defendant returned to the scene in possession of the firearm; the use of the weapon – the shooting – is distinct from possession.  The trial court properly imposed a term of imprisonment for the offense of being a felon in possession of a firearm.  (*People v. Vang*, *supra*, 184 Cal.App.4th at p. 917.)

**DISPOSITION**

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:


_____
Poochigian, Acting P.J.


_____
PEÑA, J.

11.