Filed 7/5/16  P. v. Boelkes CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067993 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN325189) |
| ADAM JAMES BOELKES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Barry J. Carlton, Deputy Attorney General, for Plaintiff and Respondent.

I.

INTRODUCTION

A jury found Adam James Boelkes guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4))[1] (count 1) and battery with serious bodily injury (§ 243, subd. (d)) (count 2).  With respect to both counts, the jury found that Boelkes personally inflicted great bodily injury, within the meaning of section 1192.7, subdivision (c)(8), thereby causing both offenses to be serious felonies.  With respect to count 1, the jury also found true a sentencing enhancement allegation that Boelkes personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a).  In a bifurcated proceeding, Boelkes admitted having suffered two prison priors (§ 667.5, subd. (b)), a serious felony prior (§ 667, subd. (a)(1)), and a strike prior (§ 667, subds. (b)-(i)).

The trial court sentenced Boelkes to an aggregate sentence of 12 years in prison.  On count 1, the court imposed a sentence of seven years, consisting of the low term of two years on the substantive offense, doubled due to the prior strike, and an additional consecutive three-year term for the great bodily injury enhancement (§ 12022.7, subd. (a)).  The court stayed execution of the sentence on count 2 pursuant to section 654.  The court also imposed a consecutive five-year term for the serious felony prior (§ 667, subd. (a)(1)).  Finally, the court struck the two prison priors.

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

On appeal, Boelkes contends that the record lacks substantial evidence to support the jury's guilty verdict on the charge of assault by means of force likely to produce great bodily injury (count 1) and the jury's true findings on the great bodily injury allegations (§ 12022.7, subd. (a)) (§ 1192.7, subd. (c)(8)) attached to counts 1 and 2. Boelkes also claims that the trial court failed to provide an adequate response to a jury question requesting clarification of the meaning of the term "great bodily injury," and that defense counsel provided ineffective assistance in acquiescing to the court's proposed response. Finally, Boelkes maintains that the trial court erred, under section 654, in imposing both a great bodily injury sentence enhancement pursuant to section 12022.7, subdivision (a) and a serious felony sentence enhancement pursuant to section 667, subdivision (a)(1), because both enhancements were premised on his infliction of great bodily injury.

We affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The People's evidence*

Approximately two months prior to September 30, 2013, victim Michael Reilly went to a bar in Oceanside and socialized with some friends. Boelkes was at the same bar that night, also with some friends. Boelkes was seated at a table directly across from Reilly. At some point during the evening, Boelkes knocked over a beer, and it spilled onto Reilly's lap. Reilly said to Boelkes, "[T]hat was fucked up," got up from the table, and started walking toward the door to go outside to smoke a cigarette. As Reilly approached the door, Boelkes punched Reilly two to three times in the back of the head.

3

Bouncers immediately grabbed Boelkes and escorted him out of the bar. Shortly thereafter, Reilly left the bar without further incident.

Reilly went back to the same bar on the evening of September 30, 2013. Approximately an hour or two after arriving at the bar, Reilly saw Boelkes at the bar, but the two did not have any verbal contact at that time. Later that night, Boelkes approached Reilly and tried to apologize for the previous incident. Reilly told Boelkes to leave him alone. Boelkes did so, but remained at the bar. Reilly and Boelkes did not speak to each other throughout the rest of the evening while inside the bar.

At some point after last call, Reilly went outside the bar to have a cigarette and wait for his friends. Boelkes approached Reilly a second time in an attempt to apologize for the previous incident. Boelkes extended his hand for Reilly to shake. Reilly declined to shake his hand, again telling Boelkes to leave him alone.

Reilly looked down to take a drag of his cigarette. As he looked back up, Boelkes punched Reilly in the left eye. While Reilly staggered backward from the first punch, Boelkes punched Reilly a second time, this time in the mouth. Reilly fell straight back, hitting his head on the cement. Boelkes's punches caused Reilly to suffer various injuries to his mouth and left eye as described in detail in part III.A., *post*.

B. *The defense*

Alexus Ferreira, a friend of Boelkes, testified that she was outside the bar at the time of the incident. According to Ferreira, Reilly "swung at [Boelkes] first," and then the two men began fighting.

4

III.

DISCUSSION

A. *There is substantial evidence in the record to support the jury's guilty verdict on the charge of assault by means of force likely to produce great bodily injury and the jury's true findings on the great bodily injury enhancement allegations*

Boelkes claims that there is insufficient evidence in the record to support the jury's guilty verdict on the charge of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) (count 1) and the jury's true findings on the great bodily injury allegations (§ 12022.7, subd. (a)) (§ 1192.7, subd. (c)(8)) attached to counts 1 and 2.

1. *Governing law*

   a. *The relevant statutes*

      i. *Section 245, subdivision (a)(4)*

Section 245, subdivision (a)(4) provides in relevant part:

> "Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished . . . ."

"Great bodily injury is significant or substantial injury.  [Citation.]  Permanent or protracted impairment, disfigurement, or loss of function, however, is not required." (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1087 (*Beasley*).)  "The use of hands or fists alone may be sufficient to support a conviction of assault by means of force likely to produce great bodily injury." (*In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161 (*Nirran W.*).)  In *Nirran W.*, the court concluded that there was sufficient evidence that a thirteen-year-old who "stood five feet two inches tall and weighed one hundred and five

5

pounds" (*id.* at p. 1160) committed an assault by means of force likely to produce great bodily injury in light of the following evidence:

> "The record shows [defendant's] assault was without warning and delivered with great force. The blow to the side of [the victim's] face was sufficient to knock her down just as she and the driver of the van were about to shake hands. The injuries she sustained caused her to be treated at a hospital for four to five hours. She testified that she felt her jaw pop out and then back in. At the time of the jurisdictional hearing almost two months later, her teeth still did not meet. Despite his slight stature, [defendant] clearly delivered the blow with sufficient force likely to produce great bodily injury." (*Id.* at p. 1162.)

### ii. *Section 12202.7*

Section 12022.7, subdivision (a) provides, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

"Great bodily injury is defined in section 12022.7, subdivision (f), as 'significant or substantial physical injury.' However, 'the injury need not be so grave as to cause the victim "permanent," "prolonged," or "protracted" bodily damage.' [Citation.] 'Proof that a victim's bodily injury is "great" . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury.' " (*People v. Woods* (2015) 241 Cal.App.4th 461, 486.)

### iii. *Section 1192.7, subdivision (c)(8)*

Section 1192.7, subdivision (c) provides in relevant part:

> "As used in this section, 'serious felony' means any of the following:

6

. . . (8) any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm."

b. *The law governing challenges to the sufficiency of the evidence*

In determining the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

A challenge to the sufficiency of the evidence supporting a jury's true finding on a great bodily injury enhancement (§ 12022.7) is governed by the same substantial evidence standard of review. (*People v. Escobar* (1992) 3 Cal.4th 740, 750); see, e.g., *People v. Saez* (2015) 237 Cal.App.4th 1177, 1189.)

2. *Application*

The record clearly contains sufficient evidence to support the jury's guilty verdict on the charge of assault by means of force likely to produce great bodily injury. Boelkes approached Reilly, and then, without warning, punched Reilly in the eye. Reilly explained that the force of the blow "was strong enough to knock me from my feet and

7

start kind of tilting backwards." The punch caused Reilly to become "dazed," knocked him off balance, and caused a cut above his eye that required sutures to close.

Boelkes then punched Reilly a second time in the mouth, causing him to lose his balance, fall straight back, and hit the back of his head on the cement. The punch also caused a significant laceration to Reilly's mouth. Reilly stated that, after he hit the ground, he "went in and out," and that he was "conscious somewhat," explaining that he "kind of heard people." Evidence that Boelkes punched Reilly in the face twice, hard enough to cause him to lose consciousness and to cause injuries to his mouth and eye that required medical attention, constitutes evidence from which a reasonable jury could find that Boelkes committed an assault by means of force likely to produce "significant or substantial injury."[2] (*Beasley*, *supra*, 105 Cal.App.4th at p. 1087; see *Nirran W.*, *supra*, 207 Cal.App.3d at pp. 1161-1162.)

The record also clearly contains sufficient evidence to support the jury's findings that Boelkes personally inflicted great bodily injury within the meaning of section

---

[2] Although not raised as a separate argument, Boelkes offers an alternative interpretation of the phrase "great bodily injury," contending that it requires an injury of " ' "graver and more serious character than ordinary battery" . . . ' which itself requires ' "physical pain or damage to the body, like lacerations, bruises, or abrasions, whether temporary or permanent." ' " Boelkes suggests that we must apply such a definition because "ambiguous statutes prohibiting 'great bodily injury' must be interpreted with sufficient specificity to avoid rendering them unconstitutionally vague." We are not persuaded. "The term 'great bodily injury' has been used in the law of California for over a century without further definition . . . ." (*People v. La Fargue* (1983) 147 Cal.App.3d 878, 886-887.) Moreover, California courts have rejected the claim that the term "great bodily injury" is unconstitutionally vague and overbroad as used in sections 245 and 12022.7. (See *People v. Guest* (1986) 181 Cal.App.3d 809, 812.)

12022.7, subdivision (a).[3]  As discussed above, Reilly testified that he lost consciousness for a short period of time after falling to the ground from the punches.  Shortly after the attack, his friends took him to the hospital.  The cut above his left eye took five stitches to close.  Reilly's left eye was swollen shut, and he could not see out of the eye at all for approximately a month and a half.  Reilly went to the hospital every two weeks after the incident for treatment on his eye.  The eye injury caused Reilly "stinging pain" for approximately two and a half to three weeks.  In addition, approximately two months after the incident, Reilly developed a cyst on his eyeball that was a result of him being unable to remove a contact lens from the eye after the injury.  The cyst caused Reilly to be unable to see properly for approximately another two weeks.

Reilly also suffered an injury to his mouth when the force of Boelkes's punch caused Reilly's tooth to lacerate his lip.  Approximately two weeks after the incident, medical personnel had to make an incision into the lip to drain pus that had accumulated from the injury.  Reilly also had to keep gauze in his mouth for approximately two weeks after the injury, which made it difficult to talk.  In addition, Reilly stated that it was "painful to eat," for approximately two weeks.  Given the nature of Reilly's injuries, the resulting pain, and the medical care required to treat the injuries, there was plainly

---

[3]     The People offered photographs of the victim's injuries in evidence, but Boelkes has not requested that the exhibits containing the photographs be transmitted to this court. (See Cal. Rules of Court, rule 8.320(e).)  We remind counsel of appellant's responsibility to transmit all exhibits necessary to review appellant's claims on appeal.  (See, e.g., *People v. Whalen* (2013) 56 Cal.4th 1, 85 ["it is appellant's burden to present a record adequate for review and to affirmatively demonstrate error"].)

sufficient evidence to support the jury's findings on the great bodily injury enhancement allegations.

Accordingly, we conclude that there is substantial evidence in the record to support the jury's guilty verdict on the charge of assault by means of force likely to produce great bodily injury and the jury's true findings on the great bodily injury allegations.

B.  *Boelkes forfeited his claim that the trial court failed to provide an adequate response to a jury question requesting clarification of the meaning of the term "great bodily injury"; Boelkes has not established that defense counsel provided ineffective assistance in acquiescing to the trial court's proposed response to the jury's question*

Boelkes claims that the trial court failed to provide an adequate response to a jury question requesting clarification of the meaning of the term "great bodily injury." Boelkes further contends that defense counsel provided ineffective assistance in acquiescing to the court's proposed response to the jury's question.

1.  *Factual and procedural background*

The trial court instructed the jury pursuant to a modified version of CALCRIM No. 3160 concerning the meaning of the term "great bodily injury" as follows:

> "Great bodily injury means significant or substantial physical injury.
> It is an injury that is greater than minor or moderate harm."

During deliberations, the jury sent the court a handwritten note that stated in relevant part:

> "Can we get clarification on the findings?  Specifically:
>
> "[¶] . . . [¶]

10

"2. Better clarification on what GBI means → what constitutes greater vs moderate harm[?]"

After receiving the note, the trial court held a hearing outside the presence of the jury with the prosecutor and defense counsel during which the following colloquy occurred:

"The Court: . . . [¶]  We have received a question or a jury note . . . . Have both of you had an opportunity to read the note?

"[Defense counsel]: Yes, your honor.

"[The prosecutor]: Yes.

"The Court: The court did draft a proposed response.  Have you both had an opportunity to see the drafted proposed response?

"[The prosecutor]: Yes.

"[Defense counsel]: Yes.

"The Court: Comments from either of you?

"[Defense counsel]: I think I am fine with the response.  I think it answers the question.  I think it's fine.

"[The prosecutor]: I believe I am too, your honor.  I just wanted to check something.

"The Court: All right.

"[The prosecutor]: I am satisfied. Thank you.

"The Court: Then what we will do is send the response back to the jurors and wait until we hear back from them."

11

After this discussion, the court provided the following response to the jury's question:

> "As to your request for clarification on what constitutes Great Bodily Injury and greater versus moderate harm, the Court refers you to Instruction 200 (Duties of Judge and Jury), which states, 'Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instruction[s] are to be applied using their ordinary, everyday meanings.'
>
> "The court cannot further define these phrases or words for you. As always you must consider Instruction 200 in its entirety and consider all the instructions together."

2. *Governing law*

   a. *Forfeiture of a contention that a trial court's response to a jury's question should be modified or clarified*

It is well established that " '[w]hen the trial court responds to a question from a deliberating jury with a generally correct and pertinent statement of the law, a party who believes the court's response should be modified or clarified must make a contemporaneous request to that effect; failure to object to the trial court's wording or to request clarification results in forfeiture of the claim on appeal.' " (*People v. Boyce* (2014) 59 Cal.4th 672, 699 (*Boyce*), quoting *People v. Dykes* (2009) 46 Cal.4th 731, 802 [citing numerous cases].)

   b. *Ineffective assistance of counsel*

To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient in that it "fell below an objective standard of

reasonableness," evaluated "under prevailing professional norms."  (*Strickland v. Washington* (1984) 466 U.S. 668, 688; accord, *People v. Ledesma* (1987) 43 Cal.3d 171, 216.)  "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  Thus, "[w]hen the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ' " 'no conceivable tactical purpose' " for counsel's act or omission.' "  (*People v. Centeno* (2014) 60 Cal.4th 659, 675 (*Centeno*).)

    3.  *Application*

Boelkes contends that the trial court's response to the jury's question did not provide "adequate guidance" and that "additional information could have been provided." However, Boelkes does *not* dispute that the trial court reiterated " 'technically correct' definitions."  Nor does Boelkes dispute that defense counsel "acquiesce[d] to the trial court's response."  Under these circumstances, Boelkes's claim is forfeited.  (See *Boyce*, *supra*, 59 Cal.4th at p. 699.)

With respect to his ineffective assistance of counsel claim, Boelkes cannot meet the high burden of establishing that there was " ' " 'no conceivable tactical purpose' " ' " (*Centeno*, *supra*, 60 Cal.4th at p. 675), for defense counsel's acquiescence to the trial court's proposed response to the jury's question.  As discussed above, Boelkes does not dispute that the trial court's response to the jury's question was legally correct.  Further, if defense counsel had sought a more "complete explanation" of the meaning of the term

13

"great bodily injury," counsel risked having the court elaborate on the meaning of the term in a manner that was unfavorable to Boelkes.

Accordingly, we conclude that Boelkes forfeited his claim that the trial court failed to provide an adequate response to a jury question requesting clarification of the meaning of the term "great bodily injury" and he has not established that defense counsel provided ineffective assistance in acquiescing to the court's proposed response.

C. *The trial court did not err in imposing both a great bodily injury enhancement pursuant to section 12022.7, subdivision (a) and a serious felony enhancement pursuant to section 667, subdivision (a)*

Boelkes claims that the trial court erred, under section 654, in imposing both a great bodily injury sentence enhancement pursuant to section 12022.7, subdivision (a) and a serious felony sentence enhancement pursuant to section 667, subdivision (a)(1) because both enhancements were premised on the same act, namely, his infliction of great bodily injury. "We review de novo the legal question of whether section 654 applies." (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.)

Section 654, subdivision (a) provides in relevant part:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

The California Supreme Court has "held that section *654 does not apply to . . . those [enhancements] that go to the nature of the offender*." (*People v. Ahmed* (2011) 53 Cal.4th 156, 162 (italics added), citing *People v. Coronado* (1995) 12 Cal.4th 145, 156-159 (*Coronado*).) The *Coronado* court reasoned that section 654 does not apply to such

14

enhancements because "they are not attributable to the underlying criminal conduct which gave rise to the defendant's prior and current convictions." (*Coronado*, *supra*, 12 Cal.4th at p. 158.) Accordingly, because imposing an enhancement premised on a defendant's status as a recidivist "does not implicate multiple punishment of an act or omission, section 654 is inapplicable." (*Ibid.*)

In *People v. Jones* (2009) 178 Cal.App.4th 853, 865 (*Jones*), the Court of Appeal applied *Coronado* and concluded that section 654 does not apply to the serious felony enhancement contained in section 667, subdivision (a)(1). The *Jones* court reasoned:

> "[S]ection[ ] 667, subdivision (a)(1) . . . qualif[ies] as [a] status enhancement[ ] because [it is] based on defendant's status as a repeat offender and not on the conduct that served as the basis for the current offense. As a result, section 654 does not apply." (*Jones*, *supra*, 178 Cal.App.4th at p. 865.)

Boelkes contends that his "sentence for assault was enhanced twice based on the same act and the same true finding of great bodily injury." In support of this claim, Boelkes argues that the court's imposition of a five-year serious felony enhancement (§ 667, subd. (a)(1)) was premised on his having inflicted great bodily injury on the victim. Boelkes is incorrect. The serious felony enhancement was premised on Boelkes having committed a serious felony *after previously having been convicted of a serious felony*. (See § 667, subd. (a)(1) ["any person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive . . . a five-year enhancement for each such prior conviction on charges brought and tried separately"]; § 1192.7, subd. (c)(8) [defining a serious felony as "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice"].) Under

15

*Coronado* and its progeny, section 654 does not bar the imposition of serious felony enhancement pursuant to section 667, subdivision (a), because the enhancement is "not attributable to the underlying criminal conduct which gave rise to the defendant's prior and current convictions." (*Coronado*, *supra*, 12 Cal.4th at p. 158; see *Jones*, *supra*, 178 Cal.App.4th at p. 865.)

In *People v. Kane* (1985) 165 Cal.App.3d 480, 487-488 (*Kane*), the court rejected an argument nearly identical to the one that Boelkes makes here:

> "Defendant further contends the court improperly made a 'dual use of facts' by enhancing his sentence twice for the use of a firearm. Defendant's argument appears to be that since the firearm use is the sole factor making the present offense a 'serious felony' under section 667, enhancement for the firearm use under section 12022.5 and enhancement for the prior burglary conviction under section 667 constitutes an improper use of a single fact to impose double punishment. We disagree.

> "This case does not involve double punishment for the single act of using a firearm. The firearm use was punished *once* as an enhancement under section 12022.5 and was further used to *define* the present offense as a 'serious felony' in order to impose an additional punishment for the *prior conviction*. It is the status of the present crime as a 'serious felony' which allows the imposition of additional punishment for the prior conviction. The two types of enhancements serve different purposes and punish different conduct. Use enhancements go to the nature of the *offense*, increasing the punishment on the basis of certain circumstances accompanying the crime. Prior offense enhancements go to the nature of the *offender*, punishing him or her for the habitual commission of crimes." (*Id.* at p. 487.)

As in *Kane*, Boelkes is not receiving double punishment for the single act of inflicting great bodily injury. Rather, Boelkes's infliction of great bodily injury "was punished *once* as an enhancement under [section 12022.7, subdivision (a)]" and was

16

further "used to *define* the present offense as a 'serious felony' in order to impose an additional punishment for the *prior conviction*." (*Kane*, *supra*, 165 Cal.App.3d at p. 487.)

Accordingly, we conclude that the trial court did not err in imposing both a great bodily injury enhancement pursuant to section 12022.7, subdivision (a) and a serious felony enhancement pursuant to section 667, subdivision (a)(1).

IV.

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

17